PETER WILMES *vs.* MINNEAPOLIS & NORTHWESTERN RAILWAY COMPANY.

June 21, 1882.

**Condemnation by Railway Co.—Damage to Contiguous Land.**—Plaintiff was owner of 120 acres of land, consisting of three forties in line from east to west. The land was occupied and used by him as one farm, his residence being on the easterly forty. Defendant, having located the line of its railway across the two westerly forties, instituted proceedings for condemnation. *Held,* that in assessing the compensation to be paid to the plaintiff, he is entitled to have the effect of the appropriation of the right of way across the two westerly forties upon the easterly forty considered and taken into account, although the petition for the appointment of commissioners described the two westerly forties only.

Condemnation proceedings. Appeal by the railway company from a judgment of the district court for Hennepin county, after a trial before *Vanderburgh, J.,* and a jury.

*R. B. Galusha* and *Woods & Babcock,* for appellant.

*Wilson & Lawrence,* for respondent.

BERRY. J.[*] To prevent confusion we will in this opinion call the respondent, Wilmes, plaintiff, and the appellant company, defendant. Plaintiff owns 120 acres of land, consisting of three forties in line as represented in the sketch following.

N.

E.

S.

The land is occupied and used by him as one farm, his residence being situate upon the easterly forty. Defendant, having located

[*]Vanderburgh, J., having tried the case in the district court, took no part in the decision of this appeal.

the line of its railway across the two westerly forties, instituted proceedings for condemnation, under Gen. St. 1878, *c.* 34.

Section 14 of this chapter permits a railroad corporation seeking a condemnation to present to the proper district court a petition describing the lands which it will be necessary to take, and setting forth the names of the owners thereof, etc., and praying the appointment of commissioners to ascertain and determine the compensation to be made to such owners, "for the taking or injuriously affecting such land."

Section 17 authorizes the court, pursuant to the petition, to appoint three commissioners to ascertain and determine the amount to be paid to such owners "as compensation for * * * damages by reason of taking or injuriously affecting any such land."

Section 18 requires the commissioners to examine all the lands which will be taken or damaged, and which are described in the petition, and to proceed to make an assessment of damages which will result to any party by reason of the construction of said railroad; and to determine and award to the owners of such land the "amount of damages arising to them respectively from the taking or injuriously affecting their said land * * * for the purposes of such (*i. e.*, the proposed) enterprise."

Section 23 provides for an appeal from the commissioners' award to the district court, and section 25 adds that "appeals shall bring before the appellate court the propriety of the amount of damages in respect to the parties to the appeal; and unless the parties otherwise agree, the matter shall be submitted to a jury and tried as other appeal cases are tried, and the court or jury, as the case may be, shall reassess the damages aforesaid; * * * but the rule for ascertaining and fixing such damages shall be based upon the same principles that the commissioners are required to adopt in originally appraising and determining such damages."

The lands of the plaintiff described in the petition, in the order appointing the commissioners, and in the award, are his two westerly forties only. The award states that the commissioners "determined, appraised, and awarded to the owners of such land and property,

and of any right proposed to be taken or injuriously affected by the prosecution of the petitioner's enterprise, the following amount of damages as compensation arising to them respectively by reason thereof, to wit," etc.

Upon the trial of the appeal which had been taken to the district court, the plaintiff (defendant objecting) offered evidence of his ownership of his easterly forty; that the same was connected with the two westerly forties, with which it formed one farm owned and occupied by him; that his residence was upon the easterly forty; and as to the amount of damages to the whole 120 acre tract by reason of the location and construction of the road. A verdict was accordingly returned for the damages to the whole of said tract.

The important question in this case is whether the evidence mentioned was properly received. In our judgment this question should be answered in the affirmative. The proceedings for condemnation, irrespective of the reception of the evidence in question, appear to have been in substantial accordance with the provisions of chapter 34, before recited, so that the question propounded resolves itself into a question as to the meaning and true interpretation of these provisions of statute, so far as called for by this case. What is meant by the expressions (all evidently referring to the same thing) "compensation for taking or injuriously affecting," "compensation for damages by reason of taking or injuriously affecting," "the amount of damages arising from the taking or injuriously affecting," the lands described in the petition, and subsequent papers and proceedings? In our opinion the word "taking" is used in a comprehensive sense. It embraces not merely the appropriation of the particular strip of land commonly denominated "the right of way," considered by itself and alone, but also the facts, circumstances, and direct effects accompanying or flowing from such appropriation. The damages arise and the compensation is to be made, not only for the specific thing taken into actual possession, but for the taking of it in the way in which it is taken; and hence damages and compensation for *taking* a strip of land for right of way are the damages which result to the owner from the taking, and the sum to which he is entitled to justly

compensate him therefor.   While there may be some clauses in the statute which, considered alone, might indicate another rule, this is beyond question its spirit and its general tenor.

In analogy to this construction, in *Scott* v. *St. Paul & Chicago Ry. Co.*, 21 Minn. 322, where the charter provision was that commissioners in condemnation proceedings should appraise the "value" of land appropriated for right of way, it was held that the word "value" embraced not only the value of the right-of-way strip as an isolated parcel of land, but such additional value as attached to it by reason of its connection with adjacent land of the same owner.   *Winona & St. Peter R. Co.* v. *Denman*, 10 Minn. 208, (267,) where this subject is treated at greater length, is in the same direction.   So, also, *Greve* v. *First Div. St. Paul & Pac.'R. Co.*, 26 Minn. 66.

We have no doubt the word "taking," in the statute under consideration, comprehends not only the appropriation of the right-of-way strip, but the direct (not the remote or speculative) consequences and effects of such appropriation.   That these embrace the consequences and effects upon other lands of the owner of the right-of-way strip adjacent thereto, or to the tract out of which it is carved, and used by him in connection with the same, is settled in *Winona & St. Peter R. Co.* v. *Denman, supra*.   We are, therefore, of opinion that evidence of the effect of the appropriation of a right of way across the two westerly forties upon plaintiff's easterly forty, upon which his house was situate, and which, together with the two westerly forties, constituted, and were used and occupied as one farm, was properly received in proof of the damages sustained by plaintiff by the taking, and of the compensation to which he is consequently entitled.

This conclusion is not at all affected by the fact that the easterly forty was not mentioned in the petition or subsequent papers.   The plaintiff was, nevertheless, entitled to have his damages for the taking assessed and paid.   Nor is it important that the commissioners did or did not in fact take into account the damages to the easterly forty. The whole matter was by the statute submitted to them, was therefore within their jurisdiction, and they might have made their award accordingly.   See *Winon i & St. Peter R. Co.* v. *Denman, supra*.   Upon

the appeal, the court, with or without a jury, was to try and did try the identical question submitted to the commissioners, and upon the principles upon which they ought to have tried it. The same rules in this regard apply as with reference to the trial of other appeals upon questions of law and fact.

With respect to our construction of the statute under which the defendant exercises the power of condemnation, it is proper to be observed that it is the only construction which secures to the land-owner just compensation for the appropriation of his property. It is therefore the only construction which will make the statute constitutional. It is therefore not only favorable to the defendant as respects its power to condemn, but it effectuates the evident purpose of the legislature in attempting to confer such power.

We believe that this disposes of the case. While we have not in this opinion considered the positions and arguments of the defendant's counsel in detail, and in the precise form in which they are presented, we think they are completely met by the views above announced.

Judgment affirmed.