[No. 672.  Decided February 17, 1893.]

BESSIE J. LEWIS, *Respondent*, v. THE CITY OF SEATTLE, *Appellant*.

EMINENT DOMAIN—DAMAGES—PAYMENT IN ADVANCE—OFFSET-
TING BENEFITS—PROCEDURE—CONSTITUTIONAL LAW.

The right to prepayment, guaranteed by the constitution, for land appropriated to public use, is a personal privilege which the owner may waive; and where a municipal corporation is permitted to proceed in condemnation proceedings without first requiring payment, the proceedings upon the part of the city are not thereby invalidated, but the city's right to the land will become a vested one upon the owner's securing compensation by suit or otherwise.

Where a proceeding for the appropriation of land for street purposes can be instituted only by the city's seeking to condemn the land, the failure to act of appraisers selected to assess benefits and damages will give the owner a common law right of action for damages for the land appropriated, and does not necessitate his proceeding by *mandamus* to enforce the prosecution of the special proceeding.

The constitutional provision relating to full compensation for land appropriated for right-of-way, "irrespective of any benefit from any improvement proposed," has no application to the appropriation of land by municipal corporations for streets.

The provisions of the Seattle city charter of 1886, allowing bene-
fits to be offset against the value of land taken for municipal pur-
poses, are not repugnant to the state constitution, and such benefits
as are special and peculiar to the tract from which the land appro-
priated was severed may be deducted.

*Appeal from Superior Court, King County.*

*George Donworth*, and *James B. Howe*, for appellant.

*Tustin, Gearin & Crews*, for respondent.

The opinion of the court was delivered by

SCOTT, J. — This is an appeal from a judgment recovered
by the respondent for the value of certain real estate ap-
propriated by the city of Seattle for a street.   The action
was commenced in January, 1892, by the filing of a com-
plaint wherein the plaintiff alleged her ownership of such
real estate on the 22d day of March, 1890.   That the city
had a charter from the Territory of Washington (granted
in 1886) up to October 10, 1890, at which time it adopted
a "freeholders' charter," under the act of the legislative
assembly of the state, approved February 26, 1890.   That
on said 22d day of March, 1890, said city, by its common
council, passed ordinance No. 1313, for the condemnation
of such real estate as a street, in and by which ordinance
all of said property was condemned and appropriated as a
portion of Weller street.   That thereafter, and pretending
to act by virtue of said ordinance, and without paying or
tendering plaintiff anything therefor, and without causing
an assessment of plaintiff's damages caused thereby to be
made, said city unlawfully and forcibly ousted plaintiff of
her possession of said property and entered into the posses-
sion of the same, and proceeded to and did grade the same
as a street, and has thrown said property and the whole
thereof open for the use of the public as a street and com-
pletely deprived plaintiff of the use and enjoyment thereof,
to her damage in the sum of $2,500.

The city admitted the plaintiff's ownership of the property, except an alley running across the same, and admitted that in pursuance of said ordinance No. 1313 it had appropriated and taken possession thereof as a street; but denied that the value of such real estate exceeded the sum of $500, and denied that the plaintiff had been damaged in any sum whatever.

It further set up two affirmative defenses, in the first of which it pleaded said ordinance No. 1313, which provided that due compensation should be made for said real estate in accordance with §§ 11 and 101 of the charter of 1886, and that the amount of said compensation should be made a charge upon the lots and parcels of land embraced within an assessment district created under the authority of said charter, which provided for the appointment of three appraisers, one of them to be appointed by the mayor, one by the owner or owners of the property subject to assessment, and one by the owner or owners of the property condemned, whose duties were to find and report the value of the land taken and the value of the land in such district benefited, so that the cost of such improvements might be assessed thereon. It further alleged in said defense that proceedings were duly had accordingly under said charter and ordinance, up to and including the appointment of such appraisers, one of whom was appointed by the plaintiff, but that no meeting of said appraisers was ever held and that they never made any assessment, report or award; that the defendant stood ready to pay to the plaintiff such sum as should be ascertained by the appraisers when they should make an award.

In the second defense it is alleged that the land condemned was a part of block one in Terry's Fifth Addition to the city of Seattle; that prior to said widening of Weller street at said point, block one of said addition projected into Weller street a distance of twenty-three feet; that both to

the east and west of said block said Weller street was sixty-six feet wide, and that by reason of the projection of said block into the street there was a width of only forty-three feet of street abutting upon said block, thereby making a jog in said Weller street by reason of the irregular and defective platting of said land in the original plat of said addition. It is further alleged that at the time of the passage of the ordinance, and ever since, the plaintiff has been the owner in fee simple of the whole of said block one, except lot six, and also of six other lots in the immediate vicinity described in the answer; that each and every of said lots of land is situated in blocks bordering on said Weller street in the immediate vicinity of said widening and improvement, and that the plaintiff derived special, direct, immediate and great benefit through the condemnation of the land so taken by reason of the increased value of each and every of the lots mentioned consequent upon the said widening of the street, and that the special and peculiar benefit so derived from the widening of said street not in common with the public generally exceeded the value of said real estate so condemned.

This condemnation took place after the adoption of the state constitution, but before the city organized under a "freeholders'" charter. Its charter of 1886 was in force except as modified by the state constitution. Section 16 of article 1 of the constitution provides that:

"No private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner, and no right-of-way shall be appropriated to the use of any corporation other than municipal until full compensation therefor be first made in money, or ascertained and paid into court for the owner, irrespective of any benefit from any improvement proposed by such corporation."

Appellant contends that the plaintiff cannot maintain a common law action to recover the value of the property

taken, as the proceedings were instituted and conducted under the charter of 1886, although the appraisers failed to act; and that she can only proceed by *mandamus* against the appraisers to compel them to proceed. That this is especially the case where, as in this instance, such payment is to be made out of a particular fund, as a recovery in this action would be a charge upon the whole city. Appellant further contends that, conceding this action can be maintained, the special and peculiar benefits derived by the plaintiff in consequence of the improvements can be offset against the value of the property taken for which the plaintiff seeks to recover (she makes no claim for any damages to the remainder of the property and her proofs were limited to the value of the land taken).

In *Brown v. Seattle, ante,* p. 35, this court virtually held that under our constitutional provision, in exercising the right of eminent domain, payment must be made in advance in all cases. If this construction is to be adhered to, it follows that the provisions of the city charter relating to a postponement thereof were inoperative, for the constitution was in force when the plaintiff's land was appropriated. However, the city might have pursued the assessment scheme for the purpose of reimbursing itself. But this right to prepayment, if it existed, was a privilege which the plaintiff could and did waive. As to how far this waiver went there may be some question. But the most favorable claim upon the part of the appellant could only be that it had the effect of postponing the right of payment for such reasonable time as would allow the city to provide a fund therefor by the assessment plan which it had adopted. The right to prepayment is personal to the owner, and a failure to insist upon it would not necessarily invalidate the proceedings upon the part of the city. The plaintiff acquiesced in the appropriation and permitted the city to proceed without first requiring payment. She affirmed the city's right to

the land by bringing her action to recover compensation, and at least, upon securing compensation, the city's right to the land would become a vested one. *Embury v. Conner*, 3 N. Y. 511; *Soulard v. City of St. Louis*, 36 Mo. 546; *Wichita, etc., Rd. Co. v. Fechheimer*, 36 Kan. 45 (12 Pac. Rep. 362); *Lawrence v. New Orleans*, 12 Rob. (La.) 453; *G. C. & S. T. Ry. Co. v. Donahoe*, 59 Tex. 128; *Mayor, etc., of Rome v. Perkins*, 30 Ga. 154.

But treating the acquiescence of the plaintiff in this matter as a consent upon her part that the city might appropriate the land and provide a fund for her compensation in the way it was attempting to do, could she thereafter, under the circumstances of this case, maintain such an action as she instituted, or must she have proceeded by *mandamus* to enforce the prosecution of the special proceeding? In support of its contention appellant cites *Paret v. Bayonne*, 40 N. J. Law, 333. In that case, however, under the language of the decision, it seems that the city had no power to appropriate lands for streets except by making the damages a charge upon the lands specially benefited. It would not apply here in the absence even of the constitutional provision, as § 5 of the charter of 1886, empowered the city of Seattle to condemn lands for streets and to collect the necessary amount to pay therefor by a general tax. It could proceed in this way or could collect the same by an assessment upon the lands benefited, under §§ 11 and 101 of said charter, which it did undertake to do.

Appellant argues that it had performed its duties in the premises and was no more in default than was the respondent; that the default was upon the part of the appraisers, and that an action against the city could not be founded upon the failure of the appraisers to act. To show that the plaintiff could have proceeded by *mandamus*, appellant quotes a clause contained in the freeholders' charter, which is as follows:

"The adoption of this charter shall not operate to abate or discontinue any existing suit, action or proceeding in court or elsewhere to which said city is a party."

It is questionable whether this clause could be held to apply to this particular matter. Appellant did not allege that the proceedings instituted by the city under said charter and ordinance were being prosecuted or were pending. It set up the proceedings down to and including the appointment of the appraisers and here the proceedings stopped. It alleged a total failure of the appraisers to act. They were entitled to thirty days within which to make a report, and this time had long expired. It can scarcely be maintained upon this state of facts that the proceedings were existing. It rather showed an abandonment thereof previous to the adoption of the freeholders' charter. And for this the city was responsible. It was incumbent on it to show that this procedure which it had set on foot was carried to an effectual termination. The plaintiff is not chargeable with any negligence or *laches* in the premises. She had no action to take therein beyond the right to name one of the appraisers, and this right she exercised. She had no control over them, but the city did have, and could have suspended the proceedings at any time and have resorted to a general tax to make payment.

If the proceedings were existing and were kept alive by the new charter, still the action was properly brought in consequence of the failure of the city to prosecute them. The city condemned the land and created the assessment district. The appraisers were to report to it, whereupon the city, through its common council, was to declare the rate of assessment, and, through its clerk, to prepare the assessment roll and deliver it to the treasurer, and in case of non-payment the amounts were to be collected by a suit in the name of the city. The rule obtaining in such a case as this is stated in Lewis on Eminent Domain, § 607 :

"If no remedy is provided by the statute, or if the statutory remedy is taken away by repeal, or if the initiation is given only to the party condemning, who fails to pursue it, the owner may have his common law action."

When the radical changes made in the manner of exercising the city's governmental powers by the adoption of the new charter are considered, it is still more doubtful whether the means existed whereby to carry these proceedings to a termination if they were pending up to the time the new charter went into effect. The old officers had no further power to act. The old council had been abrogated and in its place two legislative bodies had been created. The right to recover under the former method was at least rendered uncertain and the enforcement of it delayed, all of which is directly chargeable to the city.

The cases cited by the appellant in support of the proposition that the plaintiff could only proceed by *mandamus* can mostly be placed in two classes —*First*, Where the municipality has no power to condemn except by making compensation therefor in a particular manner, as by levying a tax upon a special district, like the case of *Paret v. Bayonne*, previously cited; *second*, where a particular remedy has been provided by statute which may be instituted by either party, as in the case of *Lindell's Adm'r v. Hannibal, etc., R. R. Co.*, 36 Mo. 543.

In this case, however, the proceedings could only be instituted by the city, and where no remedy is given at the election of either party the common law right of action remains intact. In a case like this, where the city fails to prosecute the particular proceeding, or where the same results in failure, the owner may bring a common law action. *Soulard v. St. Louis, supra; Bigelow v. City of Los Angeles*, 85 Cal. 614 (24 Pac. Rep. 778); *Bentonville R. R. v. Baker*, 45 Ark. 252; *Jamison v. City of Springfield*, 53 Mo. 224; *Blake v. City of Dubuque*, 13 Iowa, 66.

Some cases go further and are to the effect, where private property is sought to be condemned, and payment therefor is not necessary in advance, that nothing less than the pledge of the faith and credit of the state or one of its political divisions for the payment of the property owners will be sufficient, and this must be accompanied with practical, certain and available provisions for securing the application of the public faith and credit to the discharge of the constitutional obligation of payment without any unreasonable or unnecessary delay, and that a remedy for compensation contingent upon the realization of a fund for benefits within a limited assessment district, the collection of which may be deferred for an unreasonably long time, does not meet the constitutional requirement, and that in such cases the owner may resort to a common law action. *Chapman v. Gates*, 54 N. Y. 146; *Sage v. City of Brooklyn*, 89 N. Y. 189.

In considering the right to offset benefits involved in the second defense, it is necessary to construe the constitutional provision relating thereto. If the clause ''irrespective of any benefit from any improvement proposed by such corporation'' applies to municipal corporations, it must be given effect in this instance, the constitution being then in force. The constitutions of a number of the states contain substantially the first clause in ours, that ''No private property shall be taken or damaged for public or private use without just compensation having been first made or paid into court for the owner;'' but in none of them, where this clause has received a judicial interpretation, does the constitution contain the following clause found in ours, viz., ''And no right-of-way shall be appropriated to the use of any corporation other than municipal until full compensation therefor be first made in money or ascertained and paid into court for the owner, irrespective of any benefit from any improvement proposed by such corporation;'' with the

exception of the constitution of the State of California, and here the language is identical with our own.

In *Pacific Coast Railway Company v. Porter*, 74 Cal. 261 (15 Pac. Rep. 774), the provision relating to compensation irrespective of benefits was recognized as not applying to municipal corporations. It is urged by respondent that this case should not be regarded as authority in this particular because the point was not involved therein. However this may be it was sustained by the cases there cited. The case of *Butte County v. Boydston*, 64 Cal. 110 (29 Pac. Rep. 511), was decided upon the theory that benefits might be deducted from damages in the case of an appropriation of land by a municipal corporation. The case of *Tehama County v. Bryan*, 68 Cal. 57 (8 Pac. Rep. 673), is to the same purport. These cases were both decided under the constitution of California adopted in 1879, which is the one we have referred to. We also find that the case of *Pacific Coast Ry. Co. v. Porter* was thereafter confirmed in this respect in *Muller v. South. Pac., etc., Ry. Co.*, 83 Cal. 240 (23 Pac. Rep. 265); *San José, etc., R. R. Co. v. Mayne*, 83 Cal. 566 (23 Pac. Rep. 522); and *San Bernardino, etc., R. R. Co. v. Haven*, 94 Cal. 489 (29 Pac. Rep. 875). In accordance with such an interpretation of this constitutional provision the legislature of California provided that the value of land condemned should be paid for in all cases, but that the benefits resulting to the remainder of the land not taken might be offset against the damages to it. This construction was the settled law of that state at the time our constitution was framed and adopted, and that payment must be made at or before the taking of property thereunder was unquestioned. *Lamb v. Schottler*, 54 Cal. 319, 324.

It is a rule that where a law is taken from another state, which has there received a judicial interpretation, such interpretation should be of force and recognized in the state

adopting the law.   While it may be that this rule has not been observed as much in later years as it was formerly, most likely owing to the fact that laws existing in various states of substantially the same character have received conflicting constructions, and for that reason it could not be said which one the state adopting the law intended to recognize, yet here is a strong case for the application of the rule, and furnishes an instance where, if ever, it should be observed, for there was no other similar provision at the time in the constitutions of any of the states excepting that of California.

It is apparent that the exception relating to municipal corporations contained in the second clause must either apply to the rule of damages or it must have the effect of exempting such corporations from paying in advance. Appellant contends that it should apply to the rule relating to the ascertainment of damages, and argues that the decision rendered in *Brown v. Seattle* in effect decides that the city may deduct benefits, and that it should be permitted to do so under the weight of the authorities, there being no legislation on the subject.   In that case the court held that damages, which would result to adjoining property by the grading of a street, must be paid for in advance. There was no attempt to discriminate between the appropriation of a right-of-way and a taking or damaging for any other municipal purpose in relation to the right to prepayment, nor can one be drawn from the authorities, for the appropriation of a right-of-way for a street has uniformly been recognized as a taking by the courts of the country regardless of where the fee remained.

The respondent insists with much force that this exception should not be applied to the rule of damages, but should be interpreted as relieving municipal corporations from paying at or before the time of the appropriation, as such a corporation in exercising the right of eminent do-

main stands in the place of the state itself. The respondent argues that—

"The compensation to be paid the land owner, upon the taking, becomes *eo instante* a public charge; the good faith of the state, acting through the corporation, is pledged for its payment; the machinery of the state for collecting revenue may be put in operation, and all the resources of taxation may be employed in collecting the sum due the land owner. His compensation will certainly be paid, whether the city goes into possession first or last. And because the taking of property for municipal purposes is of public interest, and a delay, while estimating the damages in an action at law, might injuriously affect the public, the constitution wisely permitted the legislature to authorize the city to go into possession before the award is adjusted. But here the reason of the rule stops. There is no reason, or sense, or justice in saying that benefits should be taken into consideration, when the city condemns property, and not be considered when any other corporation condemns it. The benefits are different neither in kind nor amount. It is a matter of public notoriety that suburban railways, cable, electric and steam railroads, reaching out to tracts of land, which would otherwise be inaccessible, largely increase the value of all property in their immediate vicinity; and add far more to the values of lots and blocks than is possible to be added by the widening of a street. And yet these corporations must pay the actual cash values of the property taken irrespective of benefits. Is it not unreasonable to say that a different rule should apply to the city? When we consider the mischief which this section of the constitution was aimed at—that of taking property and paying for it with speculative profits which in most cases are never realized—it becomes clear, it seems to us, that the amount of the damages and the manner of estimating it shall be the same in all cases. No other construction is in harmony with the spirit that prompted this constitutional provision."

But it is apparent that to give this exception the effect of exempting municipal corporations from making compensation at or before the time of the appropriation, it must

either override the first clause, prescribing the time of payment, which purports to lay down an absolute rule and contains no exception, or a distinction must be drawn between an appropriation of a right-of-way and a taking for any other municipal purpose. The first clause, standing by itself, requires payment to be first made where property is taken or damaged by any corporation for any purpose.

We know of no case holding that an appropriation of land for a street is not a taking within the meaning of such a provision, and if we were to undertake to make such a distinction here, further difficulties would present themselves in construing these two clauses. The word "damaged," contained in the first clause, must be held to apply to the second clause also, or the result would be that where a portion of the owner's land is taken for a right-of-way, only the value of the part taken can be recovered, and there can be no recovery for any damages to the remainder, while in case none of the land is taken, but it is damaged, such damages could be recovered under the first clause.

If the word "damaged" is held to apply to the second clause, so that where a right-of-way is appropriated the owner can recover for the value of the land taken and damages to the remainder of the land, then the condition of affairs would be presented that damages to the remainder of the land must be paid for in advance, while the value of the land taken need not be so paid for; or if in such a case it should be construed as having the effect of postponing payment for the value and damages also by simply importing the word "damaged" into the second clause, then in a case where there are two adjoining land owners and a right-of-way is appropriated so as to take a part of the land of one of said owners and to damage the remainder, and while not taking any of the land of the other owner, yet should damage his land, that the owner whose property was taken in part could not recover payment in advance

48—5 WASH.

for either the value of the land taken or the damages to the remainder, and that his neighbor, whose land was not taken, but was damaged, would be entitled to payment in advance. There is no reason for any such discriminations. If the amount of the payment is to be segregated and part of it paid in advance, the value of the part taken should first be paid and the damages to the remainder postponed, for the value of the property taken could be easily ascertained at the institution of the proceeding, but it would be more difficult to determine in advance what damages would result from the proposed improvement. It cannot be supposed it was intended that any such anomaly should exist or be brought about as that incidental damages for the grading of a street would be recoverable where no land is appropriated, and that such damages to the remainder of the land would not be recoverable where a right-of-way is appropriated for a street under the second clause, which does not contain the word damaged. By construing this constitutional provision as requiring payment to be first made in all cases, and giving the second clause the effect of laying down a rule of damages as to the appropriation of a right-of-way by corporations other than municipal, all conflict between the two clauses is avoided, and full force is given to each and every part. Such is the best sustained construction it can receive.

The policy of laying down a rule with respect to benefits, which at least permits a discrimination to be made in favor of municipal as against other corporations, was addressed to the people, and they saw fit to embody it in the constitution which they framed and adopted. They laid down a special rule with regard to the payment of damages irrespective of benefits as to corporations other than municipal, in appropriating property for a right-of-way, and left room for the legislature to prescribe the rule of damages which should be observed with regard to municipal corporations.

In the great majority of cases the appropriation of lands
by a municipal corporation is for highway or street pur-
poses, and there may be good reason for not laying down
any absolute rule with regard to benefits by the constitu-
tion in such cases, and for leaving room for the legislature
to establish the same.    Until the legislature establishes a
rule, it will be left for the courts to determine what it
shall be.

In the states where no rule has been prescribed by leg-
islation relating to the deduction of or allowance for
benefits, the holdings of courts are very conflicting; one
extreme holding that all benefits, either general or special,
may be deducted from damages to the remainder of the
land and also from the value of the land taken; others only
allow such benefits to be deducted from the damages to the
remainder of the land and require the value of the prop-
erty taken to be paid.    Others make these same dis-
tinctions with regard to special and peculiar benefits, and
allow no deductions in either case for only such general
benefits as the owner receives in common with the public.
Lewis on Eminent Domain, §§ 463–473; 2 Dillon, Munici-
pal Corporations, §§ 616–622.

The effect of the city charter in providing for assess-
ments for benefits was to allow benefits to be deducted
from damages and the value of the land appropriated, the
constitutional provision not applying.    It is very doubtful
whether there is any well founded reason for a discrimina-
tion between the value of the land taken and the damages
to the remainder in the allowance of benefits.    The exer-
cise of the power of eminent domain in the very great ma-
jority of cases is for the purpose of obtaining rights-of-way,
and often the damages to the remainder of the tract is of
much more consequence than the value of the part taken.
In some cases it would be impossible to estimate the dam-
ages and benefits to the remainder of the tract independent

of each other. If the damages and benefits are blended, only the result can be ascertained, and benefits are necessarily involved, for the damage can only be estimated with reference to the ultimate condition the property will be left in. If the contiguous property is not rendered any less valuable by the improvement, there would be no damages resulting to the owner of it, for there cannot well be any damage where there is no pecuniary loss.

A distinction has been drawn in some cases where benefits are not allowed to be considered, as, for instance, where one side or part of an estate is injured and the other part benefited. In those instances, where benefits are not to be taken into account in arriving at the damages sustained, it has been held that the benefit to the separate part of the estate, being independent of the damage to the other part, cannot be considered. And there may be other cases where the damages can be estimated independent or separate from the benefits. But where benefits can be deducted, and the result of the appropriation of a part is a benefit to the remainder of the tract, there is no good reason for not allowing such benefit to be deducted from the value of the part taken. There may be some question in such a case whether the remainder of the tract could be assessed with the other property in the assessment district where one is created, and thus be compelled to further contribute to the payment of the compensation allowed, although assessments for benefits upon residues of lots, parts of which are taken for a street improvement, do not conflict with the constitutional prohibition against taking private property for public use without just compensation. *Genet v. City of Brooklyn*, 99 N. Y. 296 (1 N. E. Rep. 777). But it seems that it could not be done if it would result in making the owner pay for the same benefit twice.

If public works or improvements form a part of the basis with the land appropriated of an assessment or re-

covery for benefits, it should be for such as are actually in existence at the time, or such, if any, as the municipality could be compelled to construct, and not for such as might exist merely in the intention or purpose of the municipal authorities, which might or might not be created. Otherwise the property owner might be compelled to pay for something which would never be in existence.

In holding that benefits may be offset against the value of the land in this instance, we have attached some considerable importance to the provisions of the charter which had the effect of allowing it to be done. The constitution continued all laws in force that were not repugnant to it, and this solution of the question gives the plaintiff the benefit of the law as it existed at the time.

We have not given any weight to the legislation in California relating to the rule of damages under a similar constitutional provision, in considering the question of allowing benefits as against the value of the land appropriated, although we have felt bound to some extent by the interpretation given there to the clause itself. But the constitution and the legislation stand upon a different footing. The constitution permits a discrimination to be made in favor of municipal corporations, while the legislation simply makes a particular discrimination.

The respondent urges that, although benefits may be taken into consideration in arriving at the amount which the plaintiff was entitled to recover, there was no error in this instance for the reason that in the second defense the city undertook to offset benefits to other and distinct parcels of land. We are of the opinion that the benefits could only be considered with reference to the particular tract from which the land appropriated was severed, but it need not necessarily be confined to the same lot. The general holding has been that separate parcels cannot be considered unless they all abut upon the improvement, but a

distinction has been drawn where the tract embraces several lots and they are all used as one tract for a common purpose. Benefits have been assessed upon the whole of one lot where it was used for several different purposes, as for instance a portion of it being occupied by a store and the balance by dwelling houses. Lewis, Em. Dom., § 475, and authorities there cited. And in this case, by the great weight of authority, the city would not be entitled to offset the benefits to other and distinct parcels of land against the value of the land taken. To have arrived at such a result it should have pursued the original plan of levying the costs of such improvement upon the property included in the special district created for the purposes of an assessment.

It is generally held that only such benefits as are special and peculiar to the particular property can be taken into consideration. But the laying out or widening of a street may be a special benefit to the property abutting thereon, and this benefit may be offset against the damages to the owner whose land is taken therefor, although parties upon the opposite side of the street are similarly benefited and are not chargeable therewith, for the reason that none of their lands were appropriated and no damages were claimed by them. *Hilbourne v. Suffolk*, 120 Mass. 393; *Donovan v. Springfield*, 125 Mass. 371; *Cross v. Plymouth*, 125 Mass. 557; *Abbott v. Cottage City*, 143 Mass. 521 (10 N. E. Rep. 325); *Trosper v. Commissioners*, 27 Kan. 391; *Allegheny v. Black*, 99 Pa. St. 152.

It follows that the court erred in sustaining the demurrer as to the second defense, for it alleged that the particular property owned by the plaintiff abutting upon the street at the point where it was widened was peculiarly and specially benefited thereby. The fact that other parcels were included in this defense and a claim set up to have the benefits to such property also offset, would make no difference

here, for a general demurrer would not reach this kind of a defect.

The judgment is reversed.

ANDERS, STILES and HOYT, JJ., concur.

DUNBAR, C. J., dissents.