[Nos. 11491-11493.   Department Two.   December 26, 1913.]

*In re* QUEEN ANNE BOULEVARD.

THE CITY OF SEATTLE, *Respondent*, v. F. W. WALD *et al.*,

*Appellants.*[1]

EMINENT DOMAIN—DAMAGES— SPECIAL BENEFITS — OFFSET. . In eminent domain proceedings by a city, in which the damages are to be paid from the general fund, benefits may be offset against the damages, under the express provisions of Rem. & Bal. Code, § 7782.

SAME—BENEFITS—OFFSET.  Benefits may be offset against the damages on condemnation of property by a city at the expense of the general fund, without violating any constitutional rights of the property owner.

SAME—BENEFITS — OFFSET — EVIDENCE — ADMISSIBILITY.   Benefits may be offset against the damages on condemnation of property by a city at the expense of the general fund, although the benefits resulted from improvements to follow which were not provided for in the condemnation ordinance, where competent evidence established the nature and extent of such improvements with reasonable certainty, and that they would be completed within a reasonable time, and that the two proceedings constituted one united object.

SAME—ADJUDICATION—CONCLUSIVENESS—MATTERS CONCLUDED. The condemnation of land for a boulevard, is not an adjudication affecting the right of the city to offset benefits in subsequent condemnation proceedings to acquire additional rights incident to the improvement of the boulevard.

SAME—BENEFITS—OFFSET—APPORTIONMENT.   In offsetting benefits against damages in eminent domain proceedings by a city, only the special benefits peculiar to particular property can be considered, and there can be no question as to the apportionment of the benefits between separate properties.

[1]Reported in 137 Pac. 435.  .

SAME—DAMAGES—BENEFITS—OFFSET — EVIDENCE — ADMISSIBILITY. Upon the question of the amount of benefits to be offset against the damages in eminent domain proceedings by a city, it is competent to show the amounts which would have been chargeable against the property upon a special assessment plan for the same improvement.

SAME—BENEFITS—OFFSET—SEPARATE TRACTS. Benefits to one lot cannot be offset against the damages due to the same owner for injury to a contiguous lot; hence it is error to treat two lots as one tract of land, where they were unoccupied and not used in common, and each was of sufficient size to admit of separate use; whether their use and situation made them in fact one parcel, being a question for the jury, unless there is no room for different opinions.

Appeals by defendants from judgments of the superior court for King county, Mackintosh, J., entered May 5, 1913, upon the verdicts of a jury, awarding damages in condemnation proceedings. Reversed as to defendants Wald; affirmed as to the other defendants.

*Moore, Wardall, Wardall & Martin,* for appellant Wald.

*L. H. Wheeler,* for appellants Hopkins and Rushton.

*N. S. Peterson,* for appellants Wheeler.

*James E. Bradford, Howard A. Hanson,* and *Geo. A. Meagher,* for respondent.

PARKER, J.—These are eminent domain proceedings, instituted by the city of Seattle, as a single proceeding, in the superior court for King county, whereby the city seeks to acquire, as against numerous owners of property abutting upon Queen Anne Boulevard, certain rights necessary for the city to possess in order to improve that boulevard in accordance with the recent officially established and reestablished grades thereof, along several miles of its course, and to change the use of the boulevard from ordinary street to park drive and boulevard uses. The defendants Walds, Hopkins, Wheelers and Rushtons, separate owners of lots and tracts abutting upon the boulevard, were awarded damages by verdicts and judgments rendered thereon and, deeming themselves aggrieved thereby, have appealed to this court.

Separate trials were had in the superior court, but before the same jury, to determine the amount of damages to be awarded to appellants because of injury resulting to their respective properties. While the rights of these appellants are before us for determination upon four separate appeals, each upon its own record and statement of facts, except as to a number of exhibits introduced in evidence which are common to all, the appeals have so much in common, both as to the controlling facts as well as in the contentions made thereon, that we have concluded to dispose of all of them in this one opinion, and thereby save much useless repetition, both in statement of the somewhat involved facts and discussion of contentions made by counsel for the respective appellants.

Queen Anne Boulevard is several miles in length, running for the most part through one of the best residence districts of the city of Seattle, on and around Queen Anne Hill. The boulevard was laid out and, so far as was then necessary, the land therefor was acquired by eminent domain proceedings, prosecuted in pursuance of ordinance No. 16,790, mentioned in ordinance No. 26,253, in pursuance of which these eminent domain proceedings are prosecuted. The boulevard follows, in the larger part of its course, streets which had theretofore been platted and dedicated. Eminent domain proceedings were resorted to in its laying out for the purpose of acquiring land in addition to the dedicated streets which it followed. The matter of the change of the established grade of those streets, the establishment of original grades where necessary, and the physical improvement of the boulevard, which are the purposes to which these eminent domain proceedings look, were not then involved. Ordinance No. 16,790 provided only for the acquisition of additional land for the laying out of the boulevard, and not for its physical improvement. There are some recitals in that ordinance which suggest an intention on the part of the city to acquire rights other than the mere acquisition of the necessary additional land therein described for laying out the boulevard as contemplated, but

such rights are not described in that ordinance with certainty. Evidently, in view of this fact, the city officers considered the ordinance as only authorizing the condemnation of the necessary additional land, and proceeded accordingly. The judgments rendered in those eminent domain proceedings, which are before us, make it plain that nothing more than this additional land was then acquired by the city. The expense incidental to the acquiring of the additional land for the laying out of the boulevard, as contemplated by ordinance No. 16,790, was paid by special assessments made by eminent domain commissioners against the property specially benefited thereby. In this manner, Queen Anne Boulevard came into existence so far only as its mere laying out and the acquisition of the land therefor is concerned, in the year 1909.

In January, 1910, the board of park commissioners of the city of Seattle passed a resolution looking to the acquiring of jurisdiction over Queen Anne Boulevard as a park driveway, providing, so far as we need here notice its contents, as follows:

"Be it resolved by the board of park commissioners as follows:

"Section 1: That in case the city council of the city of Seattle shall by proper ordinance transfer, set aside and place under the jurisdiction of the board of park commissioners, the property described and mentioned herein for parkway and boulevard purposes, it is the intention of the board of park commissioners, and said board of park commissioners of the city of Seattle, does hereby bind and pledge itself to improve the same by grading, parking and macadamizing and in no other way improving the same, from moneys under its control and jurisdiction and without any cost or expense for such improvement being assessed against any property abutting upon, contiguous or adjacent to the property herein described." (Here follows a description of the land covered by the boulevard.)

Thereafter, in January, 1911, looking to the permanent physical improvement of the boulevard, there was passed and approved by the city council and mayor ordinance No. 26,-

253, providing for the acquisition of the rights sought to be acquired by these eminent domain proceedings, which ordinance, so far as we need here notice its provisions, reads as follows:

"Whereas, public necessity and convenience demand that said Queen Anne Boulevard be graded and regraded in conformity with the grades established herein, and that the use of said boulevard be changed from commercial to park, drive and boulevard uses; now, therefore,

"Be it ordained by the City of Seattle, as follows:

"Section 1. That the curb grades of Queen Anne Boulevard, as established by ordinance No. 16,790 of the city of Seattle, be and the same are hereby changed and established at the following elevations above city datum, to wit: [Here follow specified grades of the boulevard along its entire course to be improved.]

"That in the construction of the slopes for cuts and fills upon the property abutting upon said boulevard and approaches thereto, in conformity with such established grades, each cut shall be carried back into and extended upon the abutting real property one (1) foot for each foot in depth of cut, and each fill shall be carried back and extended upon the abutting real property one and one-half (1½) feet for each foot of elevation of fill.

"Section 2. That the use of Queen Anne Boulevard, as established by ordinance No. 16,790 of the city of Seattle, be and the same is hereby changed from commercial to park, drive and boulevard uses.

"Section 3. That all lands, rights, privileges and other property necessary to be taken, used or damaged in the grading and regrading of said Queen Anne Boulevard, as established by ordinance No. 16,790, and approaches thereto, all in the city of Seattle, in conformity with the grades established in section one hereof, and in the construction of the necessary slopes for cuts and fills upon the real property abutting upon said boulevard and approaches thereto, are hereby condemned to the public use for such purposes; and all lands, rights, privileges and other property necessary to be taken, used or damaged by the change from commercial to park, drive and boulevard uses, are hereby condemned to the public use for such purpose. Said lands, rights, privileges and other

property are to be taken, used and damaged only after just compensation has been made or paid into court for the owner in the manner provided by law.

"Section 4. That the cost of the property and property rights necessary to be condemned, appropriated, taken and damaged in order to carry out the provisions of this ordinance, together with the cost of the necessary condemnation proceedings, shall be paid from the general fund."

Thereafter, in February, 1911, there was passed and approved by the city council and mayor ordinance No. 26,340, manifestly in response to the request and action taken by the board of park commissioners as evidenced by its resolution above quoted, which ordinance, so far as we need here notice its provisions, reads as follows:

"Whereas, heretofore, the board of park commissioners have in writing designated Queen Anne Boulevard as laid out, widened, extended and established under ordinance No. 16,-790 of the city of Seattle, as property to be set aside and transferred to the board of park commissioners, for park, parkway and boulevard purposes; now therefore,

"Be it ordained by the city of Seattle as follows:

"Section 1. That all of Queen Anne Boulevard, as widened, extended, laid out and established by ordinance No. 16,-790 of the city of Seattle, including street intersections . . . be, and the same is hereby set aside for park, parkway and boulevard purposes, and the control and jurisdiction thereof transferred to the board of park commissioners subject to the provisions of section 2 hereof.

"Section 2. That nothing herein contained shall be deemed or construed to divest the city council of jurisdiction and control, and the city council hereby expressly reserves unto itself full and complete jurisdiction and control of all streets, avenues and highways herein transferred for the purpose of making any and all local improvement upon, on or under the same, except for grading, regrading, paving and parking and for creating local improvement district therefor."

The establishment of the grades specified in ordinance No. 26,253 authorizing these eminent domain proceedings meant the change of previously established grades upon portions of Queen Anne Boulevard, and the establishment of original

grades upon other portions thereof. Whether that ordinance constituted the changing of a previously established grade on the portion of the boulevard in front of appellants Hopkins' and Rushtons' properties, is one of the questions to be noticed later. After the passage of these ordinances and the adoption of the resolution of the board of park commissioners, the physical improvement of the boulevard, which was commenced and carried on by the board of park commissioners in pursuance of the scheme contemplated by these ordinances and this resolution, had proceeded to the extent that the boulevard was graded in front of appellants' properties, and the improvement upon some other portions of the boulevard had proceeded to the extent that its surface was paved, at the time the trials occurred in these eminent domain proceedings, which was in December, 1911, resulting in verdicts and judgments from which these appeals are taken. Other facts will be noticed as may become necessary in our discussion of the several contentions made by counsel.

Counsel for the city introduced evidence at the trials upon the theory that, since the expenses incurred by the city in acquiring the rights here sought as against appellants were not to be paid for by special assessments against benefited property, but were to be assumed and paid by the city from its general fund, there should be offset against appellants' damages any special benefits resulting to their property from the proposed improvement. Counsel for appellants apparently do not seriously contend against the right of the city, in eminent domain proceedings of this nature, speaking generally, to offset benefits against damages when such damages are not to be paid for by special assessments. Indeed, there would seem to be no room for such a contention, in the light of the express provisions of Rem. & Bal. Code, § 7782 (P. C. 171 § 59), reading as follows:

"When such ordinance does not provide for any assessment in whole or in part on property specially benefited, the com-

4—77 WASH.

pensation found for land or property taken or damaged shall be ascertained over and above any local or special benefits from the proposed improvement."

Our former decisions also render it plain that this may be done in an eminent domain proceeding prosecuted by a municipal corporation without violating any constitutional right of the property owner. *Lewis v. Seattle*, 5 Wash. 741, 32 Pac. 794; *Lincoln County v. Brock*, 37 Wash. 14, 79 Pac. 477; *Spokane Traction Co. v. Granath*, 42 Wash. 506, 85 Pac. 261; *Spokane v. Thompson*, 69 Wash. 650, 126 Pac. 47.

Counsel for appellants do insist, however, that the trial court erred in permitting certain evidence to be introduced by the city, bearing upon the question of benefits. The claimed objectionable evidence introduced on behalf of the city consisted of the resolution of the board of park commissioners and ordinance No. 26,340, above quoted from, pledging the construction of the physical improvement of the boulevard without the levying of any special assessment upon the property benefited to pay therefor; evidence of the nature, extent and value of the proposed improvement; evidence of the present progress made in the construction of the proposed improvement; evidence of the amount of special benefits flowing therefrom to appellants' property; and evidence of the amounts which would be chargeable against their respective properties as special assessments to pay for the proposed improvement if the same were constructed upon the local improvement and assessment plan.

It is contended that this evidence was erroneously admitted, because the proposed improvement was not specifically provided for and described in ordinance No. 26,253, authorizing the prosecution of these eminent domain proceedings. We do not think that the exact nature and extent of the improvement which the city and board of park commissioners contemplated was to follow the acquisition by the city of the rights here sought was necessary to be made in that ordinance in order to entitle the city to have the special benefits flowing there-

from to abutting property offset against damages resulting to such property from slopes, fills, change of grade and change of use of the boulevard. If, upon the trial of the question of damages resulting from these causes to abutting property, the city, by competent evidence, made the nature and extent of the proposed improvement when completed to appear with reasonable certainty, and that such improvement would be completed within a reasonable time following the acquisition of the rights here sought, all of which we think the city did make appear with reasonable certainty by competent evidence, it seems to us that special benefits flowing from such improvement to the abutting property may be offset against the damages resulting thereto from these causes. Not only did the city's evidence show with reasonable certainty the extent, nature and value of the proposed improvement and that it would be completed within a reasonable time following the acquisition of the rights here sought, but it also showed, by competent evidence, we think, that these eminent domain proceedings, together with the proposed physical improvement of the boulevard by grading and paving, in accordance with the grades established by ordinance No. 26,253, constituted one united project, so that it may be said that the benefits flowing to the damaged property resulted from the very improvements contemplated by the city to follow the acquisition of the rights here sought.

Some contention is made by counsel for appellants that special benefits cannot be lawfully offset against damages in these proceedings, because, in the prior eminent domain proceedings under ordinance No. 17,690 by which additional land was acquired for the laying out of the boulevard, benefits were charged against abutting property, including property of appellants, by special assessments to pay for the land so acquired. We have already noticed that nothing was then acquired by the city save the necessary additional land to lay out the boulevard. Of course, no benefits were offset against damages in those proceedings, since compensation for the land

taken was there paid for by special assessments; and it is plain that these special assessments were levied upon specially benefited property to pay for nothing but the additional land so acquired. Manifestly, no special benefits were considered in making those assessments save the benefits flowing from the mere acquisition of the additional land and the laying out of the boulevard. The physical improvement of the boulevard then remained a matter to be provided for in the future. The city could have thereafter lawfully proceeded with the physical improvement of the boulevard upon the local improvement and assessment plan, without its power in that regard being in the least impaired by the previous assessment levied to pay for the mere acquisition of the additional land. *Martenis v. Tacoma,* 66 Wash. 92, 118 Pac. 882. This being the law, we think it follows that the right of the city is not curtailed in having such benefits offset in condemnation proceedings necessary to the acquisition of additional rights incident to the physical improvement of the boulevard. Another thought worthy of note in this connection is that the city is prosecuting these condemnation proceedings, and appellants are resisting them, upon the theory that the city has not heretofore acquired the rights which it here seeks. That being true, it is difficult to see how there has ever been a previous adjudication upon either the question of these damages or of the benefits which will flow from the improvement being made without expense to appellants as a result of the acquisition of these rights. If this contention of appellants be regarded as sound, it would seem to necessarily follow that neither the question of damages or benefits need be tried in these proceedings. We conclude that the former assessment of benefits to pay for the mere acquisition of the land is no bar to the offsetting of benefits in these proceedings.

Some contention is made by counsel for appellants, rested upon what they conceive to be an analogy existing between the offsetting of benefits against damages as in these proceedings and the charging of the expense of the improvement

against specially benefited property by special assessment. The argument is, in substance, that, in the offsetting of benefits—that is, the considering of the damages and the benefits as to each particular tract or parcel of land aside from all others—there is a failure to equalize the benefits flowing to abutting property from the proposed improvement, and thus there is a failure to comply with one of the principles upon which special assessments are chargeable. It is true that the authorities do seem to recognize, in a measure, an analogy existing between the offsetting of benefits in an eminent domain proceeding and special assessments. 1 Page & Jones, Taxation by Assessment, § 62. It seems to us, however, that as the question is here involved, this being a pure eminent domain proceeding the purpose of which is the ultimate ascertaining of the net damages resulting to the property of appellants and others separately, it not being sought to impose any charge whatsoever upon appellants' property, the analogy invoked goes no further than to require the offsetting of benefits to be limited to special benefits; and that there is not thereby drawn into the case any question of apportionment of charge for such benefits between separate properties. In *Lewis v. Seattle*, 5 Wash. 741, 32 Pac. 794, Justice Scott, speaking for the court, observed:

"It is generally held that only such benefits as are special and peculiar to the particular property can be taken into consideration. But the laying out or widening of a street may be a special benefit to the property abutting thereon, and this benefit may be offset against the damages to the owner whose land is taken therefor, although parties upon the opposite side of the street are similarly benefited and are not chargeable therewith, for the reason that none of their lands were appropriated and no damages were claimed by them. *Hillbourne v. Suffolk*, 120 Mass. 393; *Donovan v. Springfield*, 125 Mass. 371; *Cross v. Plymouth*, 125 Mass. 557; *Abbott v. Cottage City*, 143 Mass. 521 (10 N. E. Rep. 325); *Trosper v. Commissioners*, 27 Kan. 391; *Allegheny v. Black*, 99 Pa. St. 152."

This view is reaffirmed in *Spokane Traction Co. v. Granath*, 42 Wash. 506, 85 Pac. 261, where it is also pointed out that

benefits are not rendered general so as to prevent their deduction from damages, as counsel seems to contend, merely because other property in the neighborhood of the improvement may also receive benefits of like nature. We are of the opinion that there is not here involved any question of apportioning benefits between different properties, and that the city may have all the special benefits resulting from the proposed improvement to any particular lot or parcel offset against the damages resulting to such lot or parcel, without any consideration of the question of apportioning benefits between different parcels. Our attention has not been called to any decisions which, when critically read, we regard as holding to the contrary.

Contention is directed particularly against the admission of evidence which tended to show the amounts which would have been chargeable against the property of appellants as special assessments if the city were constructing this improvement upon the local improvement and assessment plan. That the evidence presented for the purpose of showing the amount such assessment would be was competent and sufficient for that purpose, we think there is but little room for controversy. Indeed, we do not understand that it is seriously contended otherwise; but it is contended that the amount of such assessments that appellants' property would be subject to if the city were proceeding upon that plan in making the improvement, is immaterial to the question of benefits as here involved. It seems to us, however, in view of the fact that appellants' property is going to receive special benefits from this improvement without being compelled to pay therefor by special assessment, that this evidence has a direct and material bearing upon the value of the special benefits so received. We are not able to see any prejudicial effect of this evidence upon appellants' rights, since the amounts which would be assessable against their property would, in no event, be more than the special benefits, and might be materially less than such benefits, since assessments for special benefits

are not only limited by the amount of such benefits, but also by the amount of the cost of the proposed improvement, which may be materially less than the actual benefits received therefrom. We think there was no error in receiving this evidence, and that it was material as tending to show the amount of special benefits the city was entitled to have offset against appellants' damages.

Contention is made in behalf of appellants Hopkins and Rushtons that the establishment of the grade in front of their property by ordinance No. 26,253, under which these eminent domain proceedings are prosecuted, constituted the change of a previously established grade in front of their property, and that they were entitled to damages upon that theory. The evidence upon the question of there being a previously established grade in front of their property, we think, is such as would warrant the conclusion that there was no previously established grade, and that this was the establishment of an original grade upon that portion of the boulevard. However, the trial court did not so decide as a matter of law, but submitted that question to the jury upon evidence which was quite voluminous, and which we think might lead reasonable minds to different conclusions, with appropriate instructions as to what constituted the establishment of a grade, pointing out how a grade might be established by actual physical improvement, as well as by ordinance. Upon the question so submitted, the jury made a special finding against appellants, finding that there never had been a previously established grade in front of their property. It is apparent, therefore, that counsel's contention upon this question presents only a question of fact, which was found against them by the jury upon evidence which we think was sufficient to support such finding.

It is contended in behalf of appellants Wald and wife that the trial court erred in deciding, as a matter of law, that the two platted, unoccupied lots owned by them, and described by the city in its eminent domain proceedings as being in

some degree damaged by the proposed improvement, constituted a single tract for the purpose of determining both damages and benefits, and in submitting to the jury the question of their damage and benefits upon that theory, which, it is conceded, was the result of the court's rulings. It will be conducive to a clearer understanding of appellants Walds' contention to have before us the plat of their lots as introduced in evidence and conceded to show the location of the lots relative to each other and to the boulevard as follows:

These lots had been platted as a part of Nob Hill Addition, many years before the laying out of Queen Anne Boulevard. As originally platted, they were each fifty-three by one hundred and sixteen feet in area, manifestly of such size as to be separately suitable for ordinary city residence lots. By the first condemnation proceedings, there was taken from these lots a considerable portion off the southeasterly corners thereof, reducing the size of lot three but a small amount, and taking approximately one-half of lot four; leaving lot four, however, of sufficient size for use as a small residence lot, as the evidence tended to show. It is conceded that the lots have never been improved and are unoccupied. The evi-

dence does not indicate that they are held by their owners with any view to a common use. There is some evidence which may be regarded as indicating that they might be used in common to some advantage; but, if so, it is only because of the manner in which they have been cut by the laying out of Queen Anne Boulevard and not because of anything voluntarily done by their owners. During the trial, appellants disclaimed any damages to lot three, claiming damages to lot four only. The evidence introduced over appellants' objections renders it highly probable that the net damage awarded by the jury for injury to lot four was materially reduced by benefits flowing to lot three. These rulings of the trial court were erroneous if the two lots were, in fact, separate tracts. In the text of 15 Cyc. 768, it is said:

"The benefit resulting to one lot or tract from an improvement cannot be set off in determining the compensation or damages due to the same owner for the taking or injuring of a separate and distinct although contiguous tract."

This, we think, is so elementary that citation of further authority is unnecessary. It is, in principle, the same as where resulting damages are sought to a tract of land not a part of the tract from which appropriated land is taken. That is, in each case, it is only the tract of land physically invaded that is to be considered in assessing either damages or benefits. The real question, then, is: Do these lots constitute separate tracts, or are they one tract for the purpose of this case? Such questions arise in the levying of general taxes, special assessments, and in the determination of damages and benefits in eminent domain proceedings. The problem has been dealt with more frequently where the question turns upon the actual use and occupancy of the land than where unoccupied and unused land is involved. This court has had occasion to deal with the question of what constitutes a single tract in the following cases: *Lockwood v. Roys*, 11 Wash. 697, 40 Pac. 346; *Million v. Welts*, 29 Wash. 106, 69 Pac. 633; *Sultan Water & Power Co. v. Weyer-*

*hauser Timber Co.*, 31 Wash. 558, 72 Pac. 114; *In re West-
lake Avenue*, 40 Wash. 144, 82 Pac. 279; *Seattle v. Atwood*,
59 Wash. 112, 109 Pac. 326; *Idaho & Western R. Co. v.
Coey*, 73 Wash. 291, 131 Pac. 810. In the *Lockwood* case,
the views of the court would seem to lend support to appel-
lants' contention, while the *Sultan Water & Power Co.* case,
viewed superficially, may be considered as lending support
to the city's contention. However, when that decision is read
critically, there is reason for assuming that the court there
regarded the fractional parts of the section as one tract be-
cause they were used in common. The other decisions of this
court do not aid us here. There appear to be but few decis-
ions of the courts dealing with the question where unoccupied,
officially platted town or city lots are involved. The most
satisfactory solution of the problem, when so presented is,
we think, found in *Wilcox v. St. Paul & N. P. R. Co.*, 35
Minn. 439, 29 N. W. 148, where the court observed:

"One of the questions presented on this appeal from the
judgment is as to the propriety of allowing damages in re-
spect to lots from 2 to 9, none of which were touched by the
railroad. It may be deemed to have been settled by the
decisions of this and other courts that a land-owner, a part
of whose property is taken under the law of eminent domain,
is not entitled to compensation for consequential injuries re-
sulting therefrom to his entire estate, however extensive that
may be, and without regard to the purposes to which it has
been appropriated; but that such right of compensation ex-
ists only in respect to the tract or parcel of land a part of
which is taken. And even though the lands injuriously
affected are contiguous to the lands taken, so that the whole
may be said to be one body of land, yet the right to compen-
sation may not exist in respect to the whole. If one own dis-
tinct, although contiguous, farms, from one only of which
land is taken, he is not entitled to compensation for result-
ing injury to the other. *Minnesota Valley R. Co. v. Doran*,
15 Minn. 179, (230;) *St. Paul & Sioux City R. Co. v. Mur-
phy*, 19 Minn. 433, (500.) And in numerous cases, involv-
ing contests of this kind, the use to which the property has
been devoted has been deemed an important consideration in

determining whether lands, being in one body, should be deemed one tract, or several distinct tracts, for the purposes of the assessment of compensation. *Winona & St. Peter R. Co. v. Denman,* 10 Minn. 208 (267) ; *Minn. Valley R. Co. v. Doran, supra; St. Paul & Sioux City R. Co. v. Murphy, supra; Sherwood v. St. Paul & Chicago Ry. Co.,* 21 Minn. 122; *Sherwood v. St. Paul & Chicago Ry. Co.,* Id. 127; *Wilmes v. Minn. & N. W. Ry. Co.,* 29 Minn. 242, (13 N. W. Rep. 39.) In these, and in other like cases, such use, sometimes disputed, as in the cases of *Doran* and *Murphy, supra,* would have been unimportant, if the mere contiguity of the lands had been deemed enough to entitle the owner to compensation in respect to the whole.

"If the several lots of which this block consists had been actually appropriated to distinct uses, the owner would not have been entitled to compensation in respect to lots no part of which was taken. *Minn. Valley R. Co. v. Doran, supra.* It is more doubtful whether; the lands being unoccupied, he may recover compensation for the whole as one tract. It is perhaps impossible to establish any rule applicable to such cases which will not be subject to criticism. But in respect to city property, in fact unoccupied, but which appears to have been platted or divided into blocks and lots, nothing more being shown, the property should be treated as lots or blocks, intended for use as such, and not as one entire tract. *Prima facie* that character has been given to it by the proprietor. Presumably the division or platting was with a view to the use of the property, or to its disposal and ultimate use, in such subdivisions as have been made; and if any facts exist which might be considered sufficient to rebut this presumption, they should be disclosed. We therefore are of the opinion that the court below erred in allowing damages in respect to lots other than lots 1 and 10."

It is true, in that case, that there was not involved a question of benefits. But the question of damages to a tract not physically invaded, is, we think, determinable upon the same principle. This view also finds support in *Koerper v. St. Paul & N. P. R. Co.,* 42 Minn. 340, 44 N. W. 195, and *Evansville & R. R. Co. v. Charlton,* 6 Ind. App. 56. An exhaustive note reviewing the decisions touching the question of what lands are deemed part of one tract in eminent domain

proceedings is appended to *Sharpe v. United States*, in 57 L. R. A. 932, the effect of plat lines in separating tracts being there noticed on page 938. Apparently the weight of authority supports the Minnesota view, which seems to be, in substance, that regularly platted, unoccupied lots are presumed to be, until shown to the contrary, separate 'tracts and must be dealt with as such in eminent domain proceedings.

We are of the opinion that the trial court erred in deciding, as a matter of law, that being the effect of its rulings, that lots three and four are one tract for the purpose of determining damages and benefits. Indeed, as the record now stands, it might well be argued that the court should have decided, as a matter of law, that they are separate tracts. This question, however, we need not now decide, since a new trial must be granted appellants Walds because of these rulings of the trial court. The question of when two adjoining lots or tracts shall be treated as one tract or as two tracts would become a question of fact, unless the conceded facts as to their use and situation were such as to leave no room for different views upon that question. What the proof may be touching such question upon a new trial we cannot now anticipate. We only decide that the learned trial court erred in deciding the question as a matter of law against the appellants' contention. It may, or may not, upon a new trial, become a question for the jury. That such question becomes one of fact ordinarily, to be submitted to a jury under proper instructions, is pointed out in the following decisions: *Charleston & S. Bridge Co. v. Comstock*, 36 W. Va. 263, 15 S. E. 69; *Kossler v. Pittsburg, C. C. & St. L. R. Co.*, 208 Pa. St. 50, 57 Atl. 66; *St. Paul & Sioux City R. Co. v. Murphy*, 19 Minn. 500; *Bergwin v. St. Clair Incline Plane Co.*, 166 Pa. 21, 31 Atl. 71.

There were submitted to the jury interrogatories calling for special findings as to the amounts of both benefits and damages resulting to the several appellants. These the jury answered, and rendered a general verdict in conformity there-

with by deducting the benefits so .found by them from the damages so found by them. Appellants ask a ruling from this court which, in effect, would amount to the direction of entry of judgment by the trial court notwithstanding the verdict in their favor, by eliminating the amounts found as special benefits, and directing judgment for the total gross damages found. Aside from the observations we have already made, we may say that these contentions involve questions of fact only, and a careful review of all those portions of the evidence to which our attention has been directed convinces us that we would not be warranted in interfering with the verdicts so far as the sufficiency of the evidence is concerned.

Several other errors are assigned, but they are presented to us practically without argument. We feel justified in disposing of them in an equally summary manner by simply saying that an examination of the record convinces us that they are without merit.

The judgment awarding damages to Wald and wife is reversed, and they are granted a new trial because of the rulings of the trial court holding, as a matter of law, that their lots three and four should be treated as one single tract. The other judgments are affirmed.

CROW, C. J., MOUNT, MORRIS, and FULLERTON, JJ., concur.