## Trust Co. *v.* Weaver.

### (*Nashville.* March 8, 1899.)

1. EXECUTION. *Issued after debtor's death.*

   Under an execution issued after, but tested before, the debtor's death, personalty belonging to his estate may be levied on and sold. (*Post, p. 68.*)

   Code construed: § 4731 (S.); § 3717 (M. & V.); § 3001 (T. & S.).

   Cases cited and approved: Preston *v.* Surgoine, Peck, 80; Black *v.* Bank, 4 Hum., 368; Harvey *v.* Berry, 1 Bax., 252.

2. SAME. *Leviable on stock of corporations.*

   The stock in all domestic private corporations, whether organized under the Code provisions or under other valid statutes, is, under our statutes and decisions changing the common law, personal property and subject to levy of execution. (*Post, pp. 68–73.*)

   Code construed: § 2066 (S.); § 1714 (M. & V.); § 1487 (T. & S.).

   Acts construed: Acts 1875, Ch. 140; Acts 1889, Ch. 267.

   Cases cited and approved: Memphis, etc., Pub. Co. *v.* Pike, 9 Heis., 702; Young *v.* Iron Co., 85 Tenn., 194.

3. SAME. *Same.*

   Under the Code provision subjecting stock in all private corporations to levy of execution, whether formed under the Code or created theretofore or thereafter "by special law," the term "special law" is not to be understood, in its application to corporations formed since the Constitution of 1870, in the sense forbidden by that Constitution, but as embracing all laws outside of the Code, of a general character. enacted for the creation of private corporations. (*Post, pp. 69–73.*)

   Code construed: § 2066 (S.); § 1714 (M. & V.); § 1487 (T. & S.).

   Cases. cited and approved: Memphis, etc., Pub. Co. *v.* Pike, 9 Heis., 702; Young *v.* Iron Co., 85 Tenn., 194.

Trust Co. v. Weaver.

**4. DEMURRER.** *Bad, when.*

A demurrer is bad, as a speaking demurrer, which seeks dismissal of an administrator's bill enjoining the sale under execution levy of corporate stock held by his intestate as "trustee" or "treasurer," upon the assumption, not justified by the averments of the bill, that said words are to be rejected as surplusage, and the stocks treated as the intestate's individual property. (*Post, pp. 73, 74.*)

**5. SAME.** *Same.*

A demurrer is bad to an administrator's bill enjoining sale under execution levy of corporate stock belonging to his intestate's estate, where there is an averment that the intestate's title is involved in such doubt as may cause sacrifice if sale is made before the title is cleared up. (*Post, pp. 74, 75.*)

**6. JUDICIAL KNOWLEDGE.** *Not taken, when.*

In passing upon a demurrer to an administrator's bill enjoining sale under execution levy of corporate stock belonging to his intestate, the Court will not take judicial notice that the corporation whose stock is involved is a foreign corporation that has not been domesticated, in order to raise the question as to the liability of stock of a foreign corporation to levy under execution. (*Post, pp. 74, 75.*)

**7. INJUNCTION.** *Of execution sale, does not lie, when.*

An administrator cannot enjoin the sale, under a lawful execution levy, of a valuable painting belonging to his intestate's estate, upon the ground that there is no local market for the same, and that, to prevent sacrifice, it should be sold in a foreign market. (*Post, pp. 75, 76.*)

---

FROM DAVIDSON.

---

Appeal from Chancery Court of Davidson County. H. H. COOK, Ch.

STEGER, WASHINGTON & JACKSON for Trust Co.

CHAMPION, HEAD & BROWN for Weaver.

CALDWELL, J.    William T. Smith died intestate at his residence in Davidson County, Tennessee, and thereafter executions, issued on recent decrees in the Chancery Court of that county and tested prior to his death, were levied on about $14,000 of corporate stock in the Security Home Building & Loan Association, a certificate for $2,500 of stock in the Chesapeake & Ohio Railroad Company, and a large oil painting, as assets of his estate. After the levy his administrator, the Nashville Trust Company, filed this bill to enjoin the sale. The Chancellor dismissed the bill upon demurrer, and the Court of Chancery Appeals affirmed his decree.    Complainant appealed.

The different questions arising in the case can be best stated and considered separately.

1. The fact that the levies in question were made after the death does not impair their legal force. "Court executions are tested of the first day of the term next before the date of issuance." Code, § 3001; M. & V., § 3717; Shannon, § 4731. And when, by that rule, properly tested of a day anterior to the death of the judgment debtor, as in this instance, they may be levied upon his personalty, and sale thereof may be had as if he were living. Being, in fact, alive at the date of the teste, he is, in law, assumed to be alive at the date of the levy. *Preston* v. *Surgoine*, Peck, 80; *Black* v. *Bank*, 4 Hum., 368; *Harvey* v. *Berry*, 1 Bax., 252. This proposition is not controverted in the bill.

2. The complainant alleges that the Security Home

Building & Loan Association, in which Smith, the decedent, held the $14,000 of stock levied on, is a Tennessee corporation, chartered and organized under Ch. 142 of the Acts of 1875, as amended by Ch. 267 of the Acts of 1889; and that said stock is, therefore, not subject to execution. The demurrer disputes the legal conclusion drawn by the complainant from the facts alleged.

Under the common law corporate stock was not subject to execution. *Nashville Bank* v. *Ragsdale,* Peck, 296; 23 Am. & Eng. Enc. L., 632. Hence, authority for the levy here complained of, if it exists, must be found in some statute of the State.

Section 24 of Ch. 72 of the Acts of 1849–50 contained the provision that stock in all turnpike companies in this State "shall be deemed and held personal property," and "shall be subject to levy and sale as other personal property." By the Code of 1858 (which was itself an enactment, *Runnels* v. *State,* 92 Tenn., 320), that provision was greatly enlarged and made to read as follows: "The stocks in all private corporations formed under this chapter, or heretofore created, or to be hereafter created, by special law, are personal property and subject to levy and sale as such, the company in such case being required to make the proper entries in its stock or transfer book; but such sale will not relieve a stockholder from liability which had attached to him as such previous to the sale, neither will a

voluntary sale." Code, § 1487; T. & S., 1487; M. & V., § 1715.

The corporations whose stock is by this statute declared to be subject to execution are of two classes in respect of the manner of their creation— those "formed under this chapter" and those "created by special law." Manifestly the Security Home Building & Loan Association, as to whose stock the present inquiry is being made, is not one of the former class, because that class includes only turnpike, rail, and plank roads (Code, §§ 1400–1446), manufacturing, quarrying, and mining companies (Code, §§ 1447–1466), and educational and religious societies (Code, 1467–1473); and further because it was not, in fact, formed under that chapter, but under subsequent legislation.

Whether or not this association is of the latter class, as one "created by special law," is not so readily determined. If by "special law," as used in the provision of the Code quoted, is meant a particular Act passed for the single purpose of chartering a specific corporation, with an individal name and certain prescribed powers and responsibilities as was at that time allowable and not unusual, then this association was not "created by special law;" nor, indeed, could it have been created, lawfully, by such an Act since the adoption of the Constitution of 1870, for the second clause of the eighth section of the eleventh article of that instrument declares that "no corporation [meaning private corporation,

*Williams* v: *Nashville*, 89 Tenn., 487] shall be created or its powers increased or diminished by special laws." The same clause of the Constitution declares that "the General Assembly shall provide, by general laws, for the organization of all corporations [meaning private corporations, *Williams* v. *Nashville*, 89 Tenn., 487] hereafter created."

In due observance of this prohibition and mandate of the present organic law, the General Assembly has from time to time enacted "general laws" (Acts 1875, Ch. 142; Acts 1889, Ch. 267, being some of them), and thereby made ample provision for the organization of any number of each and every kind of private corporation permitted in this State.

The Security Home Building & Loan Association was chartered and organized under these laws, and, consequently, cannot be truly said to have been "created by special law," as contemplated by § 1487 of the Code, if the law there meant was of the same kind as that prohibited by that clause of the Constitution of 1870 just mentioned. It is at least highly plausible to say, as contended by counsel for complainant, that the same kind of law was in contemplation in each instance; and, but for cases heretofore decided, we would be disposed to hold such to be true, and, upon that holding, to adjudge the stock of this association not subject to execution.

In the case of *The Memphis Appeal Publishing Co.* v. *Pike*, 9 Heis., 702, Judge Nicholson, speak-

ing for the Court in reference to § 1487 of the
Code, in connection with other sections (3034 and
3035), not affecting the question involved in the
present case, said: "It is clear that they (the leg-
islators) intended to make stocks in all private cor-
porations liable to execution, as all personal prop-
erty is liable," etc. Following that case it was sub-
sequently said in *Young* v. *South Tredegor Iron Co.*,
85 Tenn., 194, that stocks in all private corpora-
tions are by statute declared to be personal prop-
erty, and subject to execution as such.

Those cases did not discuss the different parts of
the statute or analyze its phraseology, but to have
reached the conclusion broadly announced the Court
must have proceeded upon the idea that the words
"special law," as used in § 1487 of the Code, meant
any legislation for the creation of private corpora-
tions other than the general provisions set forth in
that chapter. With such a construction of those
words the conclusion there enunciated naturally fol-
lows; and the Acts under which the Security Home
Building & Loan Association was organized are in
that sense "special law," though in their scope and
in contemplation of the Constitution of 1870 they
are "general laws."

Adopting the conclusion announced in those cases,
upon the interpretation just stated as its basis, we
hold that the stock of the association in question
was subject to execution, and that the demurrer to

that particular part of the bill was properly sustained.

Shannon, in his compilation of the statutes of the State, has so changed the language of § 1487 of the Code as to make it read as follows: "The stock in all private corporations is personal property, and subject to levy and sale as such," etc. Shannon, § 2066. This change, though a departure from the true province of a compiler, makes the language employed by him conform to and express the construction presented herein as the result of the two cases cited.

3. The bill alleges that certain shares of the stock of this association, levied on by the defendant, were held by Smith, as treasurer, and that certain other shares of that stock so levied on were held by him as trustee. The demurrer to this part of the bill was bad, and should have been overruled. Corporate stock held by a debtor in a fiduciary or trust relation is not subject to execution running against him individually.

If it be true, as suggested in behalf of the defendants, that the words "treasurer" and "trustee" are matters of surplusage in this instance, and that Smith really owned the shares so designated in his own right, that fact can be made to appear only by answer and proof. No such fact is disclosed in the bill, which, upon demurrer, must be tried by its own allegations. The assignment of demurrer that seeks to bring forward such assumed fact is

bad because it is a speaking demurrer. The several propositions of law just stated as to this branch of the case are so unmistakable as to require no citation of authorities to sustain them.

4. The complainant alleges in the bill that the certificate for $2,500 of stock in the Chesapeake & Ohio Railroad Company was issued to another person, and by him indorsed in blank; that complainant does not know to whom it belongs, but presumes that it belongs to Smith's estate, and that it is necessary to settle the question of title before sale to prevent a sacrifice of the stock.

In its assignment of error to the action of the Court of Chancery Appeals in sustaining the demurrer to this part of the bill, the complainant asserts that the Chesapeake & Ohio Railroad Company is a foreign corporation, and that its stock is, therefore, not subject to execution in this State. The fact of nonresidence thus asserted cannot be considered by the Court at this time, nor its legal effect, if true, determined, because the bill does not allege that the company is a nonresident. To decide that question now the Court would be compelled, in advance, to assume, as matters of judicial knowledge, first, that the company was chartered in another State, and, secondly, that it had not been domesticated under the laws of this State. This we cannot do in whole or in part.

The doubtful statement of the bill as to the true ownership of this stock is sufficient to require an

answer and investigation of the facts. The demurrer to this part of the bill, also, should have been overruled.

5. Finally, the complainant alleges that the pict-ure levied on is very valuable, being "a painting by Madame Lemaire, of Paris, France, and known as (La Samile) "The Sleeper;" that it cost complainant's intestate $2,500; that "there is no. market for such property in Nashville," where it is seized, "and to sell it here under execution would be a great and unnecessary sacrifice of the estate." It is further alleged that "the only market in this country for such property known to complainant is New York City." Upon these allegations, and with a view of saving "the rights, both of the estate and of its creditors," the complainant asks that the sale under execution be restrained and the painting "sold in a manner to save the rights and interests of all parties."

Though an unusual case is presented by these allegations, they do not justify the interposition of a Court of equity. No ground of equitable relief is disclosed. It may be true that the picture will not bring its value if sold under execution in Nashville, but that fact alone does not call for injunctive interference. The bill assigns no reason why a better price would or could be realized by a sale through the Chancery Court. If the Master should take the painting out of the State in search of a purchaser, he might, perchance, ultimately secure a larger sum

for it than the Sheriff can get here, but we are aware of no authority for directing such a course as that. And besides, the Court cannot say, with any degree of assurance, that even that plan would result in a net gain to the estate. It might prove to be a profitless experiment.

Enter decree in accordance with this opinion and remand for further proceedings as to the stock standing in the name of Smith as treasurer and as trustee and as to the Chesapeake & Ohio Railroad Company stock.