ESTHER FAULKNER *v.* CITY OF NASHVILLE.

(*Nashville.*   December Term, 1925.)

Opinion filed July 6, 1926.

1. **TAKING OF PRIVATE PROPERTY.   Condemnation.   Municipal corporation.   Street.   Damages.**

   In the condemnation of land for street purposes by a municipality under the general internal improvement statutes; the same must be construed in connection with the condemnation statutes, if any, relating to such municipality.   (Post, p. 154.)

   Citing: Acts 1917, ch. 74; Acts 1831, ch. 24; Acts 1841-2, ch. 69;

   Cases cited and approved: Pond v. Trigg, 52 Tenn., 537; State v. Cumberland Club, 136 Tenn., 93; Kelly v. State, 123 Tenn., 528; Railroad v. Memphis, 126 Tenn., 267; Shay v. C. N. O. & T. P. Ry. Co., 133 Tenn., 1; Chapman v. State, 39 Tenn., 36; Brien v. Robinson, 102 Tenn., 157; State v. Runnels, 92 Tenn., 325; Trust Co. v. Weaver, 102 Tenn., 66; Whitworth v. Hager, 124 Tenn., 355; Bauman v. Ross, 167 U. S. 548; Pottawatomic County Com'rs. v. O. Sullivan, 17 Kan., 58; Commissioners' Court of Colbert County v. Street, 116 Ala., 28; Hoffman v. Bloomburg, & S. R. Co., 157 Pa., 174.

   Citing and distinguishing: State Highway Dept. v. Mitchells' Heirs, 142 Tenn., 58.

   Code Cited and Construed: Code 1858, sec. 1325; Thompson's and Shannon's Code, sec. 1844; Shannon's Code, sec. 3935.

2. **SAME.   Same.   Same.   Same.**

   The statute permitting the taking of private property by condemnation must be considered with reference to the established mode of estimating and assessing the damages prescribed by section 1857, Shannon's Code, (sec. 1338, Code 1858).   (Post, p. 155.)

3. **SAME.   Same.   Compensation.   Incidental benefits.**

   The word "damages" as used in municipal condemnation statute not only includes compensation for the property actually ap-

154 Tenn.—10.

propriated by the municipality, but includes damages to that part not taken; but in the estimation of these damages, incidental benefits which may result to the owner by reason of the proposed improvement shall be taken into consideration in estimating and assessing such damages, if special and not general. (Post, p. 160.)

4. SAME. Same. Same. Incidental benefits.

The advantages of a more convenient access to property taken, securing a more desirable frontage, are direct and peculiar benefits to be considered in estimating damage to remainder of property, though other property on same street received like benefits, not common to all property in vicinity. (Post, pp. 161-166.)

Citing: Mississippi Railway Co. v. McDonald, 59 Tenn., 54; Acker v. Knoxville, 117 Tenn., 224; Trosper v. Com'rs. of Saline County, 27 Kan., 391; Allen v. Charlestown, 109 Mass., 243; Sexton v. North Bridgewater, 116 Mass., 200; Allegheny v. Black's Heirs, 89 Pa., 152; Abbot v. Cottage City, 143 Mass., 521; Lewis v. City of Seattle, 5 Wash., 741; Waggeman v. North Peoria, 155 Ill., 545; Beveridge v. Lewis, 139 Calif., 619; Hilbourne v. Suffolk County, 120 Mass., 393; Parks v. Hampden, 120 Mass., 395; Cross v. Plymouth, 125 Mass., 557; Rives v. Columbia, 80 Mo. App. 173; Blair v. Charlestown, 43 W. Va., 62; Chase v. Portland, 86 Me., 367.

Citing and distinguishing: Woodfolk v. N. & C. R. R. Co., 32 Tenn., 437; Ray v. Railroad, 113 Tenn., 544.

FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson County.—HON. A. B. NEIL, Judge.

MIZELL WILSON and THOS. SCHLATER, for appellant.

A. G. EWING, JR., J. WASHINGTON MOORE, J. CARLTON LOSER, and NORMAN MINICK, for appellee.

MR. JUSTICE HALL delivered the opinion of the Court.

This is a condemnation proceeding, and originated be-fore the City Council of the City of Nashville. The proceeding was instituted by the City of Nashville under the general municipal condemnation statute carried into Shannon's Annotated Code as sections 1981 to 1984, inclusive.

Pursuant to these sections, the city passed an ordinance June 24, 1924, ordering that Church street be widened to a uniform width of sixty-five feet between property lines from Thirteenth Avenue North to Twentieth Avenue North.

The section of the charter of the City of Nashville under which Church street was ordered widened reads as follows:

"Sec. 12.   Be it further enacted, that the mayor and City Council of the City of Nashville shall, within the limitations of this act provided, have power by ordinance:
. . .

"(33)   To take and appropriate lands and grounds within said city for widening streets or parts of streets, or laying out new streets, avenues, squares, parks, promenades, viaducts and tunnels, or for the building of sewers, conduits, gas works, electric light plants, hay markets, market houses, engine houses, stationhouses, workhouses, city halls, detention hospitals, hospitals, pest houses, disinfecting or disposal plants for garbage and night soil, incinerating plants, dumps, wharves, waterworks purposes, pumping stations, settling basins, reservoirs, and rights of way for water mains, and any other public structure, building or improvement, when the public convenience requires it, under the provisions of sections 1388, 1389, 1390 and 1391 of the Code of Ten-

nessee, the same being sections 1981 to 1984, both inclusive of Shannon's Annotated Code of Tennessee.''

Sections 1981 to 1984, inclusive, of Shannon's Annotated Code, reads as follows:

"1981. When the owner of the land through which any street or alley or common is to be extended, requires damages for the same, the mayor and aldermen shall appoint freeholders, not exceeding seven in number, who, after first being sworn, shall examine the premises and assess the damages, and report the same to the mayor and aldermen, who shall cause the said report to be spread upon their minutes by the recorder.''

"1982. On payment of said damages into the office of the recorder, for the benefit of the owner of the land, the mayor and aldermen, first allowing said owner a reasonable time therefor, may order the street, alley, or common to be opened.''

"1983. If any person fail or refuse to open the street, alley, or common so ordered, he shall be subject to a fine of five dollars for every month of his failure or refusal, to be recovered by the mayor and aldermen, by suit before a justice of the peace, for the use of the town.''

"1984. Any person aggrieved by such order for opening a street, alley, or common may appeal to the circuit court.''

The foregoing provisions delegated the power of condemnation under which the city proceeded to condemn the property of the plaintiff in error, Mrs. Esther Faulkner, hereinafter referred to as the defendant.

In widening Church street it was necessary to cut off the fronts of some of the buildings and lots fronting thereon. The lot of the defendant fronted forty-nine feet

and seven inches on the south side of Church street, extended back approximately one hundred seventy-nine feet, and was improved with a two-story brick storehouse suitable for a retail grocery store or a small retail business. This brick storehouse fronted twenty feet on Church street, and extended back a distance of thirty feet.

The City of Nashville, who will hereinafter be referred to as the plaintiff, under the ordinance hereinbefore referred to, condemned seven and one-half feet off of the front of said lot. The storehouse fronting directly on the margin of the south side of said street, it was necessary for the plaintiff to take seven and one-half feet of the defendant's storehouse, the ordinance providing that Church street should be widened to the extent of seven and one-half feet on both the south and north sides thereof.

Before said street was widened, it furnished difficult traffic as a thoroughfare to serve the public for travel and parking; but, after it was widened, it afforded easy and safe travel to the traffic moving along and on said street. No question is made as to the necessity of the improvement, or as to the right of the city to condemn the defendant's property for said purpose.

Pursuant to the statute and said ordinance, a committee of five freeholders was appointed, who, after first being sworn, went upon the premises of the defendant, and, after examining the same, assessed her damages at $1,532 for the seven and one-half feet taken by the city, and said committee made a report of its findings to the mayor and city council on July 15, 1924. This report was approved by the mayor and city council on the same

date it was filed, and on July 21, 1924, the city clerk notified the defendant of this assessment, and that the amount of said assessment had been set apart to her, and was then in his hands, subject to her order.

On July 28, 1924, the city authorities notified the defendant to give possession to the city of the seven and one-half feet that had been condemned and taken for widening Church street.

The defendant, feeling herself aggrieved at the amount of the award, filed her petition, and perfected an appeal from said award to the circuit court of the county.

The city tendered the amount of the award into court, and the defendant, under an order of the court, was permitted to withdraw the amount of the award without prejudice to her rights.

Thereafter the case was heard upon a stipulation of facts before the court without the intervention of a jury.

In the stipulation of facts it was agreed that the remainder of the property of the defendant not taken was incidentally damaged by said condemnation in the sum of $900. In other words, that the value of the defendant's property, as a result of the condemnation, was $900 less after the condemnation than before.

It is stipulated that the incidental benefits resulting from the widening and improvement of Church street, between said terminal points, to the property of the defendant were greatly in excess of the incidental damages; that these incidental benefits resulted from Church street, between said points, being widened, from the increase of travel thereon, both by vehicles and on foot, from the increased accessibility to her property, from the convenience of getting to and from it with

trucks or other vehicles, and from increased facilities in
stopping and parking in front of it without causing ob-
struction or interference to the flow of traffic on said
street; that all of these increased facilities and advan-
tages inured to each piece of property abutting on the
improved area of said street, and in the same manner
and measure; that the property of the defendant re-
ceived no different or greater benefit from the improve-
ment of said street than each piece of property located
within the area of said improvement; that other prop-
erty located within the neighborhood, but not on Church
street, that is, property located on Broad street, Hayes
street, Cedar street, Patterson street, and the intersect-
ing avenues, or other streets, did not receive these par-
ticular benefits.

The court found and adjudged that the sum of $1,532,
without interest, was fair and reasonable compensation
for the property actually appropriated by the city, and
further adjudged that the defendant recover of said city
said sum, and that the city have and recover of the de-
fendant the costs of the case. The court did not allow
the defendant any incidental damages resulting to that
portion of her property not taken.

The defendant moved for a new trial on a number of
grounds, which motion was overruled by the court, to
which action the defendant excepted; prayed and per-
fected an appeal from the judgment to this court; and
has assigned errors.

In these assignments of error it is urged that the trial
court erred in not allowing defendant incidental damages,
with interest from the date of the taking of her property,
without deduction for incidental benefits.

It will be noted that the statute under which the city proceeded to condemn the property of the defendant (sections 1981 to 1984, inclusive, of Shannon's Annotated Code) provides a procedure for condemning property for streets, alleys, commons, etc., and says that the damages shall be assessed, but it does not define the word "damages," nor does it provide how they are to be measured. It will, therefore, be readily seen that the first question presented for determination is what is meant by the word "damages," as used in this statute.

It is contended by the defendant that this statute, not having defined the word "damages," and expressly provided for their measurement, we must look to the general statute on eminent domain, which is comprehensive and entire, and provides for the measurement of damages in eminent domain cases; that this general statute defines the word "damages," covers that which is omitted in the statute under consideration, and, therefore, must be looked to and considered in determining what is meant by the word "damages" in the latter statute.

The city's contention is that the Constitution (article 1, section 21), guarantees compensation only for the property actually taken; that incidental damages must be provided for by the legislature; that the statute under which the city proceeded to appropriate the defendant's property does not make provision for incidental damages, and, therefore, the defendant cannot recover incidental damages.

The general internal improvement statute is brought into Shannon's Annotated Code at section 1844 et seq. Section 1844 provides:

"Any person or corporation authorized by law to con-struct any railroad, turnpike, canal, toll bridges, road, causeway, or other work of internal improvement to which the like privilege is conceded, may take the real estate of individuals, not exceeding the amount pre-scribed by law, or by the charter under which the per-son or corporation acts, in the manner and upon the terms herein provided."

Section 1857 provides: "In estimating the damages, the jury shall give the value of the land, without deduc-tion, but incidental benefits which may result to the own-er by reason of the proposed improvement may be taken into consideration in estimating the incidental damages."

Both the General Internal Improvement Act and the Municipal Condemnation Act were codified and brought in the Code of 1858 at the same time. The first at sec-tion 1325 et seq., and the latter at section 1388 et seq.

The general internal improvement statute is full, com-prehensive, and complete. It says:

"Any person or corporation . . . or other work of internal improvement." Section 1844.

The procedure therein set out is specific. It prescribes the procedure for condemning the property; the purpose for which it is to be condemned; and in section 1857 it specifically provides how the damages shall be estimated and assessed. It says:

"In estimating the damages, the jury shall give the value of the land, without deduction, but incidental bene-fits may result to the owner by reason of the proposed improvement may be taken into consideration in estimat-ing the incidental damages."

While the Municipal Condemnation Act provides that the freeholders appointed ''shall examine the premises and assess the damages,'' it does not provide how this shall be done. In other words, it does not provide what elements or matters shall be taken into consideration in estimating and assessing the damages of the property owner. This being true, we think this statute must be construed with reference to the established mode of estimating and assessing the damages prescribed by section 1857 of the General Internal Improvement Statute, and the same measure of damages should be held to apply.

One of the rules of interpretation frequently recognized by this court is that, in order to properly construe any statute, it must be considered in connection with all others upon the same subject. In other words, the statutes must be construed together *in pari materia*. *Pond* v. *Trigg,* 5 Heisk., 537; *State* v. *Cumberland Club*, 136 Tenn., 93, 188 S. W., 583; *Kelly* v. *State,* 123 Tenn., 528, 132 S. W., 193.

In *State Highway Department* v. *Mitchell's Heirs,* 142 Tenn., 58, 216 S. W., 336, this court was called upon to construe Chapter 74 of the Acts of 1917 and Chapter 149 of the Acts of 1919, which acts, though conferring the right of eminent domain, did not prescribe the details of the procedure to be followed by the counties or highways commission in acquiring property for highway purposes.

It was held that the acts must be construed to have been passed with reference to the established mode of procedure in such cases existing at such time, and that the proper procedure, therefore, was according to Thompson's-Shannon's Annotated Code, section 1844

et seq., except as modified by section 5 of the former act and section 9 of the latter act.

In that case the court said: "Neither of the acts before us undertake to prescribe the details of the procedure to be followed by the counties or highways commission in acquiring property for highway purposes. The right of eminent domain is conferred, and under such circumstances the acts will be held to have been passed 'with reference to the established mode of procedure in such cases existing at the time.' *Railroad* v. *Memphis,* 126 Tenn., 267, 290, 148 S. W., 662, 667 (41 L. R. A. [N. S.], 828, Ann. Cas., 1913E, 153). Therefore, proper procedure herein is according to section 1844 et seq., Thompson's Shannon's Code, the general statutes regulating the taking of private property for works of internal improvement, except as such general practice is sought to be modified by the above quoted sections of the acts of 1917 and 1919."

In further support of this rule reference may be had to *Sharp* v. *C., N. O. & T. P. Ry. Co.,* 133 Tenn., 1, 179 S. W., 375, Ann. Cas., 1917C, 1212. In that case the plaintiff sought to recover of the defendant railway company damages for the wrongful killing of his nonresident intestate. The plaintiff based his right of action on section 3935 of Shannon's Annotated Code (Code of 1858, section 2203), which provides, in substance, that letters testamentary or of administration may be granted upon the estate of a person who resided, at the time of his death, in some other State or territory of the union, or in a foreign country, by the county court of any county in this State, if the deceased left assets in this State. The railway company contends that the right of action was not

an asset within the meaning of the statute, because the wrongful killing was not a right of action in the representative at the time the act using the word assets was enacted, therefore it could not have been in the minds of the legislature when they used the word "assets."

In determining this question, the court said:

"It is suggested that Shannon's Code, section 3935 (Code of 1858, section 2203), copied supra, was taken from Acts 1831, chapter 24, and Acts 1841-42, chapter 69, and at that time the right of action for personal injuries resulting in death died with the injured party, and therefore they could not have been intended to cover a cause of action such as that sued on in the case before us, originating with the Code of 1858, and that for this reason such a claim could not be treated as assets. The argument is not sound. It is true the substance of the section was in the original acts referred to, but this section was made a part of the Code of 1858, along with the sections giving the right of action for wrongful death, and therefore they must be construed together, just as if they originated with the Code. The whole Code of 1858 was itself a single enactment, and went into effect as a whole on the 1st day of May, 1858. The title and enacting clause are as follows:

" 'An act to revise the statutes of the State of Tennessee.

" 'Be it enacted by the General Assembly of the State of Tennessee, that the general statutes of the State of Tennessee shall be as follows.'

"Then follows the whole Code as one act or body of laws. *Chapman* v. *State*, 2 Head (39 Tenn.), 36, 41; *Brien* v. *Robinson*, 102 Tenn., 157, 167, 52 S. W., 802;

*State* v. *Runnels,* 92 Tenn., 320, 323, 324, 21 S. W., 665; *Trust Co.* v. *Weaver,* 102 Tenn., 66, 69, 50 S. W., 763; *Whitworth* v. *Hager,* 124 Tenn., 355, 360, 140 S. W., 205.''

We think the foregoing cases furnish ample authority for the conclusion that the General Internal Improvement Statute and the Municipal Condemnation statute must be construed together, just as if they originated with the Code, and, the Municipal Condemnation Statute not having defined the word ''damages,'' we may look to the definition of that word given in the General Internal Improvement statute, both of said statutes being modified and enacted at the same time in the Code of 1858, and the word ''damages'' appearing in the Municipal Condemnation Statute must be held to be the same as is defined in section 1857 of the General Internal Improvement Statute.

In 20 Corpus Juris, section 122, p. 642, it is said:

'' 'Compensation' and 'damages' are practically equivalent terms, and although it has been held that 'compensation' means the sum which will remunerate the owner for the land actually taken, while 'damages' signifies the allowance made for injury to the residue, this distinction is not ordinarily observed.''

In *Bauman* v. *Ross,* 167 U. S., 548, 17 S. Ct., 966, 42 L. Ed., 270, it was held that the word ''damages,'' in relation to the right of a person to recover compensation and damages for property taken by eminent domain, is of general import, and equivalent to ''compensation;'' that it includes more than the mere value of the property taken, for often the main injury is not in the value of the property absolutely lost to the owner, but in the ef-

fect upon the balance of his property of the cutting out of the part taken.

To the same effect is the holding of the court in *Pottawatomie County Com'rs* v. *O'Sullivan,* 17 Kan., 58, 60.

In *Commissioners' Court of Colbert County* v. *Street,* 116 Ala., 28, 22 So., 629, 632, it was held that the word "damages," as used in Code, section 1437, providing that a person applying for the establishment of a road shall, when the damages are assessed to the owner, etc., is used to indicate the compensation to be paid to the owner, and is equivalent to the words "just compensation," and hence will not be limited to the mere value of the land taken.

In *Hoffman* v. *Bloomsburg & S. R. Co.,* 157 Pa., 174, 27 Atl., 564, 565, it was held that the term "damages" in a grant of a right of way to a railroad company on payment of the damages means all the damages resulting from the location and construction of the railroad through plaintiff's land; the measure being the difference in value of the entire property or tract as a whole, as it was before the railroad was laid upon it, and as it is affected by the railroad after it is finished and completed.

We are of the opinion that the word "damages," as used in the municipal condemnation statute, not only includes compensation for the property actually appropriated by the municipality, but includes damages to that part not taken, but in the estimation of these damages incidental benefits, which may result to the owner by reason of the proposed improvement, shall be taken into consideration in estimating and assessing such damages, if special and not general.

We now come to a consideration of the second question presented by the defendant's assignments of error, which is that the court erred in not allowing the defendant incidental damages in the sum of $900 with interest from the date of the taking of her property, sustained by that portion not taken by the city.

It is insisted by the defendant that the benefits inuring to that portion of her property not taken, which are set out in the stipulation of facts, and have been hereinbefore referred to, cannot be set off against her incidental damages, because such incidental benefits are not peculiar and special to her property, but are general, and are only such benefits as inured to each piece of property located on said street within the improved area, and that her property received no benefits different to other property located on said street.

The stipulation of facts shows that Church street is an arterial highway which leads through the heart of the city to thickly populated sections of its western part, and is a short route between said points; that it was a very narrow and congested street before it was widened by condemnation proceedings; that it was to relieve such congestion and facilitate travel that said street was widened and improved; that said street was widened and improved for a distance of approximately one-half a mile; that along said street there was property of various descriptions, vacant property, storehouses, and residences; that some of the houses were frame and some brick, and some were situated near the street line and some abutted thereon; that, because of the widening of said street, some houses became nearer the street line, and, in some instances, portions of buildings had to be torn away; that

a portion of defendant's building had to be removed, and the remainder of it altered; that before said street was widened it furnished difficult traffic as a thoroughfare because of its narrowness to serve the public for travel, or for stopping at, parking alongside, loading and unloading on, said street within said area; that before said improvement the stopping of trucks, of drays, or automobiles along the same was a serious menace and obstruction to traffic; that, after said improvement, said street, between terminal points, afforded easy and safe travel thereon, safety and ease in stopping, convenience for parking, loading, and unloading, easy access and approach to all property abutting thereon, and travel thereon has been greatly increased by said improvement.

The rule laid down in the case of *Woodfolk* v. *Nashville & Chattanooga Railroad Co.*, 2 Swan, 437, was this: "The fair cash value of the land taken for public use, if the owner were willing to sell, and the company desired to buy that particular quantity, at that place and in that form, would be the measure of compensation."

To which is added: "From this definition of the nature of the transaction, it will follow that there can be nothing added to the price on account of the unwillingness of the owner to part with his land, or to have the improvement there, or because he may have to build fences and walls, or be put to inconvenience in getting to his out buildings, or have them to remove, or such like inconveniences. . . . These considerations are not to enter into the estimate of the jury to enhance the price, but on the other side, the value is not to be reduced by the consideration that the improvement about to be made will be advantageous to the owner in the amelioration

and enhanced value of his remaining land, the increased facility in travel or trade it will afford him, or the location of a depot or town upon his land.''

When the value of the land appropriated has been thus ascertained, that value, when paid, constitutes the just compensation to which the owner is entitled by the constitution.  But the legislature may make proper regulations ''for an account or estimate of incidental 'loss or damage,' or injuries to the landowner.  These may consist of the necessity created of building new fences, removing buildings, etc.  And against this may be set off the 'benefits and advantages' to the owner in the enhancement of the value of his remaining land of the same or any adjoining tract—his increased facilities of travel,'' etc.

In *Mississippi Railway Co.* v. *McDonald,* 12 Heisk., 54, it was held that the incidental benefits to the owner which may be set off against his incidental damages, in estimating the damages to be paid him for the taking of his land for railroad purposes, do not included the general advance in value of other lands in the neighborhood resulting from the construction of the road.

In *Wray* v. *Railroad,* 113 Tenn., 544, 82 S. W., 471, the court, in defining what incidental benefits may be set off against incidental damages sustained by that portion of the property not taken, said:

''Such benefits may consist in the location of a depot on the land, or in the preservation of the land by the cuts and embankments, and other matters.  See Lewis on Eminent Domain, section 476.  And the incidental damages may consist in the necessity of new fences and walls, the removal of outbuildings, or the danger or in-

154 Tenn.—11.

convenience of getting to them, or to wood or water, and many other things. Lewis on Em. Domain, section 496."

In *Acker* v. *Knoxville,* 117 Tenn., 224, 96 S. W., 973, which was an action brought by Acker against the city of Knoxville to recover damages growing out of a change in the grade of Dale avenue in said city, it was held that evidence of the cost of a rock wall, as a result of the grading, and the possible impairment of the right of ingress and egress of the plaintiffs to and from their property, could properly be considered by the jury in estimating their damages, and the freedom of their property from the dirt and dust of the street, as a result of the improvement, could be considered as a benefit in estimating the damages to which they were entitled.

In 2 Lewis on Eminent Domain, section 704, p. 1216, it is said: "The benefits resulting from opening a street through property, whereby additional frontage is created or it is rendered more accessible, are special. So, where a street is widened, any increase in value in the part not taken, by reason of fronting on a wider street, is a special benefit."

To the same effect is *Trosper* v. *Com'rs of Saline Co.,* 27 Kan., 391; *Allen* v. *Charlestown,* 109 Mass., 243; *Sexton* v. *North Bridgewater,* 116 Mass., 200; *Allegheny* v. *Black's Heirs,* 99 Pa., 152; *Waggeman* v. *North Peoria,* 155 Ill., 545, 40 N. E., 485; *Abbott* v. *Cottage City,* 143 Mass., 521, 10 N. E., 325, 56 Am. Rep., 143; and *Lewis* v. *City of Seattle,* 5 Wash., 741, 32 Pac., 794.

In *Beveridge* v. *Lewis,* 137 Cal., 619, 67 Pac., 1040, 59 L. R. A., 581, 92 Am. St. Rep., 188, it was said that benefits are of two kinds, general and special; the former arising from an increase in the value of the land, com-

mon to the community generally, from advantages which would accrue to the community from the improvement, and which are conjectural and incapable of estimation, and may never be realized. Special benefits are such as result from the mere construction of the improvement, and are peculiar to the land in question.

In *Allen* v. *Charlestown,* supra, where land was taken for the laying out of a street, it was held that benefits were not the less direct and special to the landowner because other estates upon the same street were benefited in a similar manner. The court said that the kind of benefits which must not be allowed to be estimated for the purpose of deduction (meaning general benefits) were those which came from sharing in the common advantage and convenience of increased public facilities, and the general advance in value of the real estate in the vicinity by reason thereof; that the advantages of more convenient access to the particular lot of land in question, and of having a front upon a more desirable avenue, were direct benefits to that lot, giving it increased value in itself, though it might be the same in greater or less degree with each and every lot of land upon the same street, but such advantages were direct and special to each lot; that they were in no proper sense common because there were several estates, or many, even, that were similarly benefited.

A benefit is not prevented from being special by the fact that estates on the opposite side of the way are benefited in like manner from the construction of the highway. *Abbott* v. *Cottage City,* supra.

To the same effect is the rule announced in *Hilbourne* v. *Suffolk County,* 120 Mass., 393, 21 Am. Rep., 522, and *Allen* v. *Charlestown,* supra.

It would be otherwise, however, if the benefit were common to all the lands in the vicinity. *Parks* v. *Hampden,* 120 Mass., 395; *Cross* v. *Plymouth,* 125 Mass., 557.

In *Rives* v. *Columbia,* 80 Mo. App., 173, it was held that, where the grading of a street gave to a piece of property better elevation and better drainage, this benefit was special. In that case the court said that, though it might have been a common advantage to each lot on the street, it was nevertheless a special advantage to each lot which was not enjoyed by the property generally in the neighborhood of the street; that a special benefit did not necessarily mean such benefit as was enjoyed by one piece of property.; that many pieces belonging to different owners might be similarly situated with reference to an improvement, and yet fall far short of being all of the property in the vicinity; that whenever a benefit was common to all in a vicinity it was special to none; but that it did not follow that a benefit might not be special to several without being common to all.

In *Lewis* v. *Seattle,* supra, the court said it was generally held that only such benefits as were special and peculiar to the particular property could be taken into consideration. But the laying or widening of a street might be a special benefit to the property abutting thereon, and this benefit might be offset against the damages to the owner whose land was taken therefor, although parties on the opposite side of the street were generally benefited and not chargeable therewith, for the reason that none of their lands were appropriated, and no damages were claimed by them.

In *Blair* v. *Charleston,* 43 W. Va., 62, 26 S. E., 341, 35 L. R. A., 853, 64 Am. St. Rep., 837, it was said that,

if property is enhanced in value by reason of a public improvement, as distinguished from the general benefits to the whole community at large, it is specially benefited, and is to be assessed for special benefits, notwithstanding every other piece of property upon or near the improvement may, to a greater or less extent, likewise be specially benefited. In other words, it is not only such benefits as are special, or limited to the particular property, thereby excluding the consideration of such benefits as are common to other property similarly situated, but it is such benefits as this: That the particular property is, by the improvement, enhanced in value—that is, specially benefited—that are to be considered. If a piece of property is enhanced in value, its enhancement, or, in other words, benefits to the property, cannot be said to be in common to any other piece of property specially enhanced in value, and it is thus specially benefited within itself, and irrespective of benefits that may be conferred, by the improvement, upon other properties.

In *Hilbourne* v. *Suffolk County,* supra, it was said that there were two kinds of benefits received by an estate bounded upon a way laid out, altered, or widened. First, the special and direct benefit arising from its own position upon the way itself; and, second, general benefits arising, not from its location on the way, but from the vicinity and advantages caused by the way, which affected all estates in the neighborhood equally, and which were shared in common with such estates. The direct and peculiar benefit might be set off; the general benefit could not.

To the same effect is *Chase* v. *Portland,* 86 Me., 367, 29 Atl., 1104.

From the foregoing authorities, the conclusion must be reached that the increased accessibility to the defendant's property, the convenience afforded her in getting to and from it with trucks and other vehicles, and the increased facilities for stopping and parking vehicles in front of it, were all advantages peculiar to the defendant's property. In other words, the advantages of a more convenient access to her property, and of having a front upon a more desirable street, were direct benefits accruing to it, giving it increased value, and that such direct and peculiar benefits are proper advantages to be considered in estimating her damages to the remainder not appropriated by the city. And this is true, notwithstanding other property situated upon the same street, and within the improved area, received similar benefits. It is expressly stipulated that other property located within the neighborhood, but not on the street improved, did not receive these particular benefits, and they are not, therefore, common to all property in the vicinity or neighborhood, and, for this reason, cannot be held to be general.

It results that we find no error in the judgment of the trial court, and it will be affirmed, with costs.