T. B. EDGINGTON v. KANSAS CITY, MEMPHIS & BIRMINGHAM RAILROAD CO. and ST. LOUIS, SAN FRANCISCO RAILWAY CO.

Western Section. July 30, 1929.

Petition for Certiorari denied by Supreme Court, March 15, 1930.

686

Jesse Edgington, of Memphis, for plaintiff in error.
Canada, Williams & Russell, all of Memphis, for defendant in error.

SENTER, J. For convenience the defendants in error, Kansas City, Memphis & Birmingham Railroad Co., and St. Louis, San Francisco Railway Co., will be referred to as the petitioners, and plaintiff in error, T. B. Edgington, will be referred to as the defendant.

In the spring of 1927 the petitioners filed a petition in the circuit court of Shelby county, seeking to condemn for railroad purposes about 92/100 of an acre of land of a 36-acre tract belonging to the defendant. A jury of view was duly appointed, and made its report as to the damages to be assessed against the petitioners, The jury of view fixed the actual value of the land taken at $2,000, and the incidental damages to the remainder of the tract at $7,235, and further found that there were no incidental benefits, making the total award of $9,235 covering the value of the land actually

taken amounting to 92/100 of an acre, and the incidental damages to the remainder of the 36-acre tract.

Both parties appealed from the verdict of the jury of view.

The case was tried before a jury in the circuit court, and resulted in a jury verdict in favor of the defendant of $550 for the 92/100 acres actually taken by the petitioners, and did not allow anything for incidental damages. Judgment was rendered by the trial judge for the amount of the jury verdict. The defendant made a motion for a new trial, which motion was overruled and disallowed. From the action of the court in overruling and disallowing the motion for a new trial, the defendant has appealed to this court and has assigned twenty-five grounds for error.

Before taking up for disposal the numerous assignments of error, we will give a summary of the facts as disclosed by the record.

It appears that T. B. Edgington purchased the 36 acres about the year 1880, and had been in the possession and ownership of the tract since that time. At the time he purchased the 36 acres there were no railroad yards adjoining this tract, but a few years thereafter a single railroad tract was built some distance from the 36 acre tract owned by the defendant, and a little later the petitioners acquired about twenty acres of land extending down to a public road known as Dunn avenue, and established thereon switching yards. The trackage on this twenty acres was gradually increased as the needs of the railroad necessitated. About March, 1927, the petitioners desired to concentrate their yards in the environments of Memphis, and to have all the yards brought to this particular section, including the removal of the yards across the river from Memphis in Arkansas, and this necessitated acquiring additional acreage and on which to build additional tracks and certain buildings used in connection with the switching yards, and also to change Dunn avenue from where it then ran adjoining the old yards, and to do away with that portion of Dunn avenue on which the railroad yards abutted and to put in a new road which ran in a northeastern and southwestern course intersecting and crossing Dunn avenue and continuing in a southeastern direction and then in an easterly direction and then back to the north crossing the railroad tracks with an overhead bridge at or near the point where Dunn avenue crossed the railroad tracks at a grade crossing. The changing of this roadway was made the subject of a special contract between the railroads and the County Road Commissioners. It also appears that Dunn avenue from a point east from where it crosses Hollyford road, was poorly improved and was an ordinary dirt road. Dunn avenue under the new arrangement was to remain open for some distance east of Hollyford along the north boundary of the thirty-six-acre tract until it reached the point where the new proposed road

·changed its course, and cutting off the 92/100 of an acre of the thirty-six-acre tract, this being a triangular parcel containing the 92/100 acres out of the thirty-six-acre tract. By making this alteration in the road the frontage of the Edgington thirty-six-acre tract on a public highway on the north and northeast section remained the same as to front footage as before the change in Dunn avenue was made. From a plat filed it appears that with the alteration as made and the taking of the 92/100 acres it left the T. B. Edgington tract of thirty-six acres fronting 733/38 feet on Dunn avenue, and 424 feet fronting on the new highway. By this arrangement, the taking of the additional property including the fraction of an acre from defendant Edgington and about three and one-half acres of the Voegeli tract, and about eight acres of the Heiskell land, and by changing Dunn avenue and building the new highway, the new yards and the old yards of the petitioners were thus increased considerably in area and extending their holdings out to the new highway, which cut off the 92/100 acres of the Edgington land and also the three and one-half acres of the Voegeli tract and the portion of the Heiskell tract taken, and this new property thus acquired by the petitioners to be used in the extension of their yards in that locality and also for the erection of certain buildings in connection with the consolidated yards of the petitioners.

Much evidence was taken by the respective parties on the question of the value of the lands taken and on the matter of incidental benefits and incidental damages to the remainder of the tract. The thirty-six acres of land had not been made a subdivision, and lay outside of the city limits of Memphis, but it was shown that its principal value was for subdivision purposes. There was a decided conflict in the evidence offered by the respective parties, especially as to the value of the property taken, and also the effect of the taking of this property and the extension of the yards on the remaining portion of the thirty-six-acre tract. The proof of the value of the 92/100 acres as shown by the defendant's witnesses, was approximately $2000, and the incidental damages to the remainder of the thirty-six acres was about $8000, while the evidence offered by the petitioners as to values ranged from $250 to $400 for the 92/100 acres actually taken, and that the incidental benefits offset the incidental damages to the remainder of the tract. The defendant sought to show by proof that the thirty-six-acre tract had suffered in value on account of the yards of the petitioners having been established in close proximity to his property prior to the taking of the 90/100 acres and the other property taken in 1927 for the extension of the yards. The trial judge held that this evidence was not competent in this proceeding, and held that only the incidental damages resulting from the extension of the yards under the 1927 enlargement

could be considered, and that any incidental damages sustained by the defendant to this thirty-six-acre tract on account of the building of tracks, etc., on its original holdings before the new property was acquired, could not be considered in arriving at the incidental damages sustained by the taking of this new property.

Considering the large number of assignments of error, it would be inexpedient to set out each assignment and discuss it separately. The major portion of the assignments are based on the refusal of the trial judge to give certain special requests in charge to the jury tendered by the defendant, Edgington. We have carefully examined each of the special requests refused by the trial judge, and have examined the general charge, including a supplemental charge, to see if the special requests refused, where a sound statement of the law was contained, were covered by the general charge. The first and second assignments state that the verdict is contrary to the weight of the evidence, and there was no evidence to support the verdict of the jury. By these assignments it is contended that there was no evidence to support the finding of the jury that the balance of the thirty-six-acre tract did not sustain any incidental damages.

There was a decided conflict in the evidence as to value, both on the question of incidental damages sustained to the balance of the thirty-six-acre tract, and also the value of the property actually taken. If the trial judge correctly instructed the jury on these subjects, there was evidence to support the verdict reached by the jury.

The third assignment goes to the action of the court in refusing to give in charge to the jury the second special request. This request was refused by the learned trial judge, as appears from the record, because it was argumentative. This special request was in the following language:

"In ascertaining the value of the property taken you will consider the various uses which the property may be put to; such as the subdivision of it for residental purposes, manufacturing and industrial plants, warehouses and other purposes.

"You will also consider the continued growth of the city and the close proximity of the land to the City of Memphis and whether or not this property lies on or in the line of great extension, expansion and development of the city.

"These facts will be factors for your consideration in fixing the value of the property. In fixing this value you will assess its value on April 5, 1927, this being the date of condemnation by the jury of view. You will consider the continuous growth of the City of Memphis and its suburbs and what appears to be its past, present and future growth toward the location of this property as an element of your consideration in fixing the price.

You will consider in fixing the damages the availability of this property for residential purposes and a subdivision of it into lots for residences.

"In considering its value for residential purposes you will consider its facilities and probabilities for obtaining sewerage, artesian water supply and electric lights. If the property is located in such a manner upon the line of expansion and growth of the city in such a way as to indicate that at no distant day the territory in which this land lies will be furnished with a sewerage system, with artesian water and electric lights, and manufactured or natural gas, the court charges you that these prospective improvements will be a factor for your consideration in fixing the value of the property taken."

So much of this special request as directed the jury to consider the various uses for which the property is suitable, such as a residential subdivision, manufacturing and industrial plants, etc., it was fully covered by the general and supplemental charge of the court. Other portions of this special request would present purely speculative matters, and other portions, we think, are clearly argumentative, as held by the learned trial judge.

The fourth assignment also goes to the action of the trial judge in refusing to give in charge the third special request tendered by defendant. This special request is on the subject of elements to be considered as incidental damages to the remainder of the tract of land not actually taken, resulting from the operation and location of the yards; the smoke, cinders, gases, noise, dust, and odors as the result of operating the yards. The court fully instructed the jury on these elements in the general and supplemental charge.

The fifth assignment is too general. By it the action of the court in admitting certain evidence on certain questions is complained of, without quoting the evidence, and in the same assignment charges that the court erred in refusing to give the special request No. 5 in charge to the jury. This special request No. 5 is on the question of determining the incidental benefits as well as the incidental damages, and the elements to be considered therein. Special request No. 5 was fully covered by the general charge, and the alleged error of the court in admitting certain evidence complained of is too general in its scope, and does not set out the particular evidence complained of, and to this extent does not comply with the rules of this court. The pages of the transcript are cited, and we have looked to the evidence contained on the pages referred to, and think this evidence was properly excluded.

The sixth assignment charges error by the court in the statement of the general charge to the effect that it is admitted without any contention that the railroad companies have a right to make this

condemnation. The question of the right of the petitioners to condemn the property actually taken must be conceded under the law applicable to condemnation proceedings under the law of eminent domain. Under this assignment of error it is also contended that the court erred in refusing to give in charge defendant's sixth special request. This special request states in substance that the petition for condemnation made no mention of closing Dunn avenue, and that the taking of this property by the railroad was a trespass.

The court made proper reference to the closing of Dunn avenue by the petitioners under an agreement with the county commissioners of Shelby county, and the opening of the new highway to take the place of Dunn avenue from the point east where Dunn avenue intersected with the new highway. We think the instruction in the general charge was clear and explicit on that subject, and further, that the closing of that portion of Dunn avenue, and the substitution of the new highway referred to as Frisco avenue having been authorized by a special contract between the county road commissioners and the petitioners, was not a pertinent question on the matter of the right of the petitioners to close that portion of Dunn avenue which would pass directly through their yards when the new property was acquired, and to relocate the highway from that point so as to have the highway pass along the new boundaries of the railroad property.

Under this same assignment it is said that the court erred in charging the jury that any benefits would accrue to the defendant by reason of opening the new highway and improving the new highway by making it a gravel road, etc. This entire assignment of error is too general and covers three separate and distinct questions. However, the general charge merely instructed the jury with reference to the new highway taking the place of the old highway where the same had been abandoned, and was not prejudicial to the defendant.

The seventh assignment is directed to the action of the court in refusing to give in charge special request No. 7 offered by defendant. This special request is as follows:

"The court charges you that the mere fact that a portion of the plaintiff's land lay across from defendant's track on Dunn avenue, and that it could have been occupied by roundhouses, machine shops and other offensive matter, and that therefore the plaintiff's are entitled to some consideration from this fact, the court charges you that this land having been held vacant by the company that they are entitled to no consideration growing out of their potential rights to have put up roundhouses machine shops on the property which lay vacant.

"The court further charges you that the defendants right to make these defenses against the railroad sprang into existence

along with their petition for condemnation of the property and that all matter relating to the potential rights of plaintiff, are incompetent and irrelevant, and you will not consider any evidence that has been introduced upon that feature of the case.''

Under this assignment of error it is further contended that the court erred in excluding all testimony as to the damage that would have been done to defendants remaining property by the whole yards of plaintiffs. The evidence excluded is not set out, but pages 146-147 of the transcript are referred to.

The court gave a full and complete charge on all elements of damages resulting from the taking of the property of defendant under the condemnation proceedings. The court limited the elements of damages to be considered to such use of the property as would result from the taking of the property for the purposes for which it was taken. This, we think, was proper. Prior to the taking of the property the railroads had the full right to use all the acreage it then owned for the extension of its yards and such buildings as would be necessary in the operation of its business and yards at that location. They had held this property and had used it for railroad yard purposes for twenty or more years, and gradually extended the trackage in the yards as the business required, and it was clearly the right of the railroads owning that acreage for railroad yard purposes to erect such buildings thereon as may become necessary, and this was a right which accrued to the railroads from the date they acquired the property for that purpose, and they had exercised this right. It is true that they did not put all the tracks, etc., down at one time when they first acquired the property, but during the twenty years or more they had increased the tracks and yard purposes from time to time, and all this prior to the condemnation of the property now involved. We see no error in the action of the court in refusing this special request No. 7.

The eighth assignment goes to the action of the court in refusing to give in charge defendant's special request No. 9. This special request was refused by the trial judge because it was covered by the general charge on the subject that benefits must be special to the defendant's property and not general benefits enjoyed by the property holders generally. The charge of the court on this subject clearly defined general benefits, and distinguished general benefits from special benefits, but the trial judge, in order to make his charge clear and full on the subject, read from the decisions of the Supreme Court to the effect that even general benefits, under proper circumstances and in certain situations, could be special as well as general. (Faulkner v. Nashville, 154 Tenn., 145; Newberry v. Hamblen County, 157 Tenn., 495). We do not think there was any

confusion in this portion of the general charge. The court had first stated the general principle of law on the subject, and to clarify his statement he read from the case of Newberry v. Hamblen County, supra.

The ninth, tenth, and eleventh assignments allege error on the part of the court in refusing to give in charge special requests Nos. 10, 11 and 12. These requests were refused because covered by the general charge on the respective subjects. We think there was no error in refusing these special requests, and without quoting these special requests we refer to the same as set out in the record, and the general charge of the court covered these requests.

The twelfth assignment states that the court did not give in charge special request No. 13. The bill of exceptions contains this special request No. 13, and underneath in brackets we find the following: "Given—M. R. P." The letters "M. R. P." are the initials of the trial judge. Under this assignment of error it is said that the trial judge did not actually give the special request No. 13. We cannot accept this statement as controlling over the recitation in the bill of exceptions that it was given.

The thirteenth assignment is directed to the action of the court in refusing to give in charge special request No. 14 offered by the defendant. This special request is as follows:

"If you find from all the proof in this cause that the yards of the plaintiffs ran up to or near the defendant's property and if you further find that the operation of the yards was such a nuisance as to cause damage to his property the court charges you that he could seek redress in the courts and collect any damage that he could prove was done him by the railroad company, but if the operation of the yards could not be shown by him to be a nuisance and if he could not show satisfactorily that he was damaged by the smoke, gases, vapors, noise, cinders and other things incident to the operation of the yard, he would have no action against said railroad company and he could collect no damages, and until a part of this property had been taken by the railroad by a condemnation proceedings, he was not entitled to presume that the then yards of the railroad company would be filled with railroad tracks and roundhouses and smoke producing chimneys. But now that a part of his land has been taken, he is entitled to presume that all of the yards would be taken up by the railroad as its necessities require in the operation of the yards, and he is no longer required to establish the fact that the yards are a nuisance to the neighborhood and can claim any prospective damage to his remaining property that he is able to establish to the satisfaction of this jury."

This special request was refused because covered by the general charge, as stated by the court. The general charge on this subject is in the following language:

"Now I want to charge you as to the effect of incidental damages claimed in this case and of incidental benefits. The proof shows in the case—and there is no contention about this—that for twenty years the Yale yards of the railroad yards by some other name, or maybe by this name—have been existing in close proximity to the property of Col. Edgington, the defendant. That no property of his was taken in the construction of these yards or the laying out of these yards for railroad purposes. Therefore any inconvenience that he might have suffered from these railroad yards or the laying out of these yards for railroad purposes, therefore any inconvenience that he might have suffered from these railroad yards was an inconvenience and burden to the public generally, and for this no recovery can be made. It is to the land actually condemned, the 92/100 acres, that the plaintiff, the railroad, occupied. This land the law permits and you will presume they had a right to fill and had, so far as its uses and purposes intended and comprehended, the entire tract even with its yards, machine shops, or anything else for railroad construction and use.

"Therefore, you will not consider incidental damages which grew out of the occupation and use of the property before this 92/100 acres was taken on the 5th day of April, 1927, and also you are not to consider any incidental benefits growing out of that. Any incidental damages or incidental benefits growing out of the railroad yards before the taking of this property. But you must weigh and consider the taking of this track and such damages and benefits as may have followed incidentally from its taking.

"Now, I trust I have made myself clear to you on the proposition because I conceive it to be the law of the case and the common sense view taken of it."

"If there has been any excessive use of the property a suit should be filed for that. But no ordinary and proper use of the railroad yards during this time, whether in the shape of nuisance or not, is not to be considered in this case, because the property taken was 92/100 acres and it is the damages incident that follow from that and other takings at the time.

"The proof also shows without contradiction in the case, and as a part of the general scheme of improvement and construction in the neighborhood of the Yale yards, about three acres was taken of the Veogeli property, and eight acres of the Heiskell

tract, all being taken about the same time and as a part of the general scheme of improvement.

"Now, in considering the incidental benefits and incidental damages to the tract of land belonging to the defendant, that is the remainder of the tract excluding the 92/100 acres, you may consider any damages that occur incident from the railroad company not only of the 92/100 acres, but all the other acreage, acreages of the Veogeli tract and Heiskell tract, which was a part of the general plan of improvement and which was taken at the same time that the 92/100 acres was taken.

"Now, it has been correctly stated here the theory of the law which is, when a railroad company takes land—pay for or condemns it for its uses,—that the law presumes every use could be made of that land that the railroad may think necessary and proper in the conduction of its business. The jury is to presume as in this suit, that all the property taken was used for this purpose. You will consider all of the 92/100 acres will be used and it will be occupied by the railroad company in its business, and that all of the Heiskell tract will be used and occupied and all the Veogeli tract will be used and occupied, because it is a fixed right upon the part of the railroad company to use and occupy and the law presumes it will be used for the purpose for which it has been taken. So when you come to consider the question of incidental damages you will presume that these various tracts including the Edgington tract, the subject matter of this suit, will be used by the railroad company in manner I have indicated and for the purpose of public service.

"So you will eliminate from your mind the question of incidental damages and incidental benefits which occurred in the years previous to the taking of that occurred from the old yards which ran up to and near this property; for all such damages to the public general in their character and cannot be either allowed or disallowed in the case that you are trying, involving land—the taking of the 92/100 acres of the land in question."

This is followed by the trial judge reading to the jury the excerpt from the Supreme Court decisions referred to.

Taking this portion of the general charge in connection with the facts, we are of the opinion that it contains a correct statement of the law on the subject, and fully covers the special request No. 14 tendered by the defendant.

The assignments of error Nos. 14, 16, 17, also go to the action of the court in refusing to give in charge special requests Nos. 15, 16, and 17. These special requests practically cover other special requests which have already been considered, and contain but a

variation of the same statement of the principle invoked, and these were also covered by the general charge.

By the fifteenth assignment it is said:

"The court erred in refusing to permit the defendant to prove that there had been but little use of the yards by plaintiffs for twenty years, that there were no buildings on the yards that emitted smoke to the annoyance of the neighborhood, and that the few tracks used were of great distance from the defendant's property and caused him no annoyance and that a nuisance had to be established as a fact and could not be presumed."

The pages of the transcript are cited under this assignment but the evidence referred to is not set out under this assignment, and hence this assignment does not comply with the rules of this court. However, the court fully charged the jury on the various elements of damages and the uses of the property, and this evidence was held to be incompetent because it was an effort to recover incidental damages for a condition that obtained prior to' the condemnation in the present suit. We find no error under this assignment.

The eighteenth assignment also embraces two separate and distinct questions and matters. By a portion of this assignment the action of the court in excluding the same evidence referred to under the 15th assignment is again challenged, and also the action of the court in refusing to give in charge special request No. 18, on the same subject that the evidence was offered to support is challenged. For the reasons above set forth we find no error in refusing this request.

The nineteenth assignment alleges error by the court in refusing to give in charge defendant's special request No. 19. By this request the court was asked to charge the jury that evidence pertaining to sales of property on April 6, 1927 should not be considered, because the sale occurred one day after the condemnation suit was instituted, and requested the court to charge that no sales made subsequent to April 5, 1927, should be considered. This request was refused. We understand the rule to be that it is not competent to prove other sales of land made at a subsequent date if the time has been several months or several years after the condemnation. But it is competent to prove other sales made of similar property in the same vicinity at about the time this sale was made, or recently after the condemnation. On this subject the court instructed the jury that other sales were to be considered and given such evidential value as the jury would think proper considering the proximity of the property, the similarity of the property, and the time the sale was made.

The twentieth assignment challenges the action of the court in calling the jury back of his own motion to give additional instructions to the jury. The record shows that after the jury had been

instructed and had retired to consider the case, and on the morning following, but before the jury had returned a verdict, the trial judge called the jury in, and stated that there was a matter that he probably had already charged the jury on, but being uncertain as to whether he had charged on that subject, he desired to instruct the jury with reference to considering the value of the defendant's property for residential subdivision purposes, etc. This charge was especially favorable to the defendant, and certainly could not have been prejudicial to the defendant. The court stated to the jury that he was uncertain as to whether he had charged on that subject, and did not wish to emphasize its importance, but merely to be certain that the jury be instructed on that subject. We find no error in this action of the court.

There are other assignments of error that we deem it unnecessary to separately discuss in this opinion. We have examined assignments twenty-one, twenty-two, twenty-three, twenty-four and twenty-five, and do not think either of them have any merit, and find no error in the action of the court under these assignments.

While the assignments of error and the briefs in support thereof are elaborate, we think the determinative questions involved were submitted to the jury under full and comprehensive instructions by the court. There was a decided conflict in the evidence on the questions of values, but the jury by its verdict, has settled those questions adversely to the contention of appellant. There is evidence in the record to support the verdict, and there being evidence to support the verdict, the verdict of the jury concurred in by the trial judge will not be disturbed on appeal if there is material evidence to support the verdict. It is true that if the verdict of the jury is either excessive or so insufficient as to warrant a conclusion that the verdict is the result of passion, prejudice or caprice, the case should either be reversed and remanded for a new trial or the damages increased by suggestion of the court, and unless such increase or decrease as may be suggested is accepted, the case would be reversed and remanded for a new trial. However, there is a decided conflict in the evidence as to the value. It became largely a question of judgment, and under the conflicting evidence, and the rules governing the award of damages, as charged by the court, the jury arrived at the verdict. However disappointing this amount may be to appellant, we cannot say that the judgment was insufficient, or so insufficient as to indicate passion, prejudice or caprice.

Before closing this opinion we will advert to the contention made by appellant that under the authority of Railroad v. Hinds, 134 Tenn., 296, he was entitled to recover in this case for damage to his property resulting from the use of the yards by the petitioners prior to the acquisition of the new property for the new ex-

tensions. We have examined this case, and the very learned discussion by the writer of the opinion in that case on the subject of incidental damages. We quite agree that Railroad v. Hinds, supra, goes into a very full and satisfactory discussion of the whole subject of incidental damages resulting where a portion only of the tract is actually taken, and the damages to the remainder of the tract. We do not find that the able opinion in that case is in conflict with the holdings and the charge of the learned trial judge in the present case, but the learned trial judge in the present case was evidently familiar with the Hinds case, and we think his rulings on the evidence and his general charge to the jury is in harmony and accord with the opinion in the Hinds case.

After a careful examination of all the assignments of error, and the entire record, we are constrained to reach the conclusion that the assignments of error are not well taken, and that the judgment of the court below must be affirmed. Appellant and surety on the appeal bond will pay the cost of this appeal.

Heiskell and Owen, JJ., concur.